# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

STATES OF TENNESSEE, ARKANSAS, ALABAMA, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, MISSOURI, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, UTAH, and WEST VIRGINIA,

*Plaintiffs-Appellants*,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

*Defendant-Appellee.*

_____

On Appeal from the Judgment of the United States District Court for the
Eastern District of Arkansas (No. 2:24-cv-84-DPM)

## APPELLANTS' OPENING BRIEF

JONATHAN SKRMETTI
  *Tennessee Attorney General*
J. MATTHEW RICE
  *Solicitor General*
WHITNEY D. HERMANDORFER
  *Director of Strategic Litigation*
REED N. SMITH
VIRGINIA N. ADAMSON
  *Strategic Litigation Counsel*
JOSHUA D. MINCHIN
  *Honors Fellow*
OFFICE OF THE TENNESSEE
  ATTORNEY GENERAL
P.O. Box 20207
Nashville, Tennessee 37202
(615) 741-8726
Whitney.Hermandorfer@ag.tn.gov

TIM GRIFFIN
  *Arkansas Attorney General*
NICHOLAS J. BRONNI
  *Solicitor General*
DYLAN L. JACOBS
  *Deputy Solicitor General*
ASHER STEINBERG
  *Senior Assistant Solicitor General*
OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
(501) 682-6302
Nicholas.Bronni@arkansasag.gov

*Additional counsel listed in signature block*

# SUMMARY OF THE CASE

In April 2024, the Equal Employment Opportunity Commission (EEOC) promulgated a Final Rule under the Pregnant Workers Fairness Act (PWFA) that forces covered employers to promote elective employee abortions in contravention of their pro-life laws and policies. *See* Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024). Plaintiff States are employers bound by EEOC's Final Rule. The States sued and sought preliminary and declaratory relief against EEOC's unauthorized abortion-accommodation mandate, which directly inflicts compliance costs on the States. The States argued that EEOC's action violated the PWFA, the Administrative Procedure Act, and the U.S. Constitution. The States also challenged the constitutionality of EEOC's structure, which insulates its heads from at-will removal by the President.

Despite the States' role as directly regulated parties and undisputed compliance costs arising from the abortion-accommodation mandate, the district court entered *sua sponte* dismissal of the States' action for a supposed lack of Article III standing. This appeal mainly seeks reversal of that dismissal. The States also challenge the district court's denial of their preliminary injunction motion.

Oral argument in this appeal is appropriate considering the significant issues of standing, statutory interpretation, and administrative law the case presents. Appellants respectfully request 15 minutes of argument time per side.

# TABLE OF CONTENTS

Summary of the Case ............................................................... i

Table of Authorities ............................................................. iv

Introduction .....................................................................1

Jurisdictional Statement .........................................................4

Statement of the Issues...........................................................4

Statement of the Case.............................................................6

    A. Plaintiff States promote fetal life through state law and policy, including employment policies. ............................................6

    B. Congress passes the PWFA to accommodate pregnancy and childbirth, not abortions. ........................................................8

    C. EEOC proposes a Rule reading the PWFA to require employers to accommodate workers' elective abortions.....................................11

    D. EEOC finalizes its abortion-accommodation mandate and acknowledges employers' resulting costs. .........................................13

    E. The lower court dismisses Plaintiff States' case as other States obtain an injunction. ........................................................16

Summary of the Argument.........................................................19

Legal Standard ..................................................................22

Argument.........................................................................23

I.    The States Are Directly Regulated Parties with Article III Standing to Challenge EEOC's Final Rule..............................................23

    A. The States established three injuries traceable to the Final Rule and redressable by its vacatur and the States' other requested relief..24

    B. The district court erred at each prong of the standing analysis...........33

    C. Outright dismissal of the States' action was improper. .....................42

ii

II.    This Court Should Consider and Grant the States' Requested Preliminary Relief Against the Final Rule. ...................................................................45

A. The States are likely to succeed on the merits. ....................................46

B. The remaining factors favor relief........................................................51

Conclusion ...........................................................................................................53

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*281 Care Committee v. Arneson*
638 F.3d 621 (8th Cir. 2011) ...............................................................39

*Am. Farm Bureau Fed'n v. EPA*,
836 F.3d 963 (8th Cir. 2016) ...............................................................24

*Arizona v. EPA*,
77 F.4th 1126 (D.C. Cir. 2023) .............................................................26

*Ashton v. U.S. Copyright Off.*,
310 F. Supp. 3d 149 (D.D.C. 2018) .......................................................35

*Auer v. Robbins*,
519 US. 452 (1997) .............................................................................42

*Axon Enters. v. FTC*,
598 U.S. 175 (2023) ..................................................................... 43, 44

*Baker Elec. Co-op, Inc. v. Chaske*,
28 F.3d 1466 (8th Cir. 1994) .......................................................... 6, 51

*Bernbeck v. Gale*,
829 F.3d 643 (8th Cir. 2016) ...............................................................43

*Bonacci v. Transp. Sec. Admin.*,
909 F.3d 1155 (D.C. Cir. 2018) ............................................................26

*Bucklew v. Lombardi*,
783 F.3d 1120 (8th Cir. 2015) ..............................................................44

*California v. Texas*
593 U.S. 659 (2021) ..................................................................... 33, 34

*Chamber of Com. v. Fed. Elec. Comm'n*,
69 F.3d 600 (D.C. Cir. 1995) ..................................................... 35, 36, 42

*Chevron, U.S.A., Inc. v. Nat. Res. Def. Council, Inc.*,
467 U.S. 837 (1984) .............................................................................22

*Cigna Corp. v. Bricker*,
103 F.4th 1336 (8th Cir. 2024) ...............................................................23

*City of Clarkson Valley v. Mineta*,
495 F.3d 567 (8th Cir. 2007) ................................................ 35, 37, 44

*Clapper v. Amnesty International USA*
568 U.S. 398 (2013)................................................................ 33, 34

*Conners v. Gusano's Chi. Style Pizzeria*,
779 F.3d 835 (8th Cir. 2015) .............................................................24

*Corbett v. Transp. Sec. Admin.*,
19 F.4th 478 (D.C. Cir. 2021)...........................................................26

*Dakotans for Health v. Noem*,
52 F.4th 381 (8th Cir. 2022) .............................................................52

*Dataphase Sys., Inc. v. C L Sys., Inc.*,
640 F.2d 109 (8th Cir. 1981) .............................................................23

*Davis v. FEC*,
554 U.S. 724 (2008)..........................................................................43

*Demarais v. Gurstel Chargo, P.A.*,
869 F.3d 685 (8th Cir. 2017) .............................................................28

*Digital Recognition Network, Inc. v. Hutchinson*,
803 F.3d 952 (8th Cir. 2015) .............................................................42

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022)................................................................ 6, 7, 30

*Doe v. C.A.R.S. Prot. Plus, Inc.*,
527 F.3d 358 (3d Cir. 2008) .............................................................49

*EEOC v. Houston Funding II, Ltd.*,
717 F.3d 425 (5th Cir. 2013) .............................................................47

*FDA v. All. for Hippocratic Med.*, 602 U.S. 367 (2024) ....................... 3, 25, 33, 34

*FEC v. Cruz*,
596 U.S. 289 (2022)................................................................ 23, 38

v

*Garcetti v. Ceballos*,
547 U.S. 410 (2006) ...........................................................................30

*Gardner v. First Am. Title Ins. Co.*,
294 F.3d 991 (8th Cir. 2002) ............................................................23

*Garmong v. Tahoe Reg. Planning Agency*,
806 F. App'x 568 (9th Cir. 2020) .....................................................43

*H&R Block, Inc. v. Block, Inc.*,
58 F.4th 939 (8th Cir. 2023) .............................................................46

*Haaland v. Brackeen*,
599 U.S. 255 (2023) ..........................................................................42

*HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*,
594 U.S. 382 (2021) ..........................................................................48

*Home Instead, Inc. v. Florance*,
721 F.3d 494 (8th Cir. 2013) .............................................................23

*In re Union Pac. R.R. Emp. Pracs. Litig.*,
479 F.3d 936 (8th Cir. 2007) .............................................................49

*Iowa League of Cities v. EPA*,
711 F.3d 844 (8th Cir. 2013) ..................................................... *passim*

*Iowa Utils. Bd. v. FCC*,
109 F.3d 418 (8th Cir. 1996) .............................................................52

*Kentucky v. Biden*,
23 F.4th 585 (6th Cir. 2022) ................................................. 6, 30, 51

*Kentucky v. Biden*,
57 F.4th 545 (6th Cir. 2023) .............................................................52

*Kentucky v. FHA*,
--- F. Supp. 3d ----, 2024 WL 1402443 (W.D. Ky. Apr. 1, 2024)........25

*Krauel v. Iowa Methodist Med. Ctr.*,
95 F.3d 674 (8th Cir. 1996) ..............................................................49

*Lankford v. Sherman*,
451 F.3d 496 (8th Cir. 2006) ........................................................ 22, 23

*Larson v. Valente*,
456 U.S. 228 (1982)...................................................................39

*League of Women Voters v. Newby*,
838 F.3d 1 (D.C. Cir. 2016)........................................................52

*Loper Bright Enters. v. Raimondo*,
144 S. Ct. 2244 (2024)...............................................................48

*Louisiana v. EEOC*,
--- F. Supp. 3d ----, 2024 WL 3034006 (W.D. La. June 17, 2024) ............. *passim*

*Lujan v. Defs. of Wildlife*,
504 U.S. 555 (1992)..................................................... *passim*

*Massachusetts v. EPA*,
549 U.S. 497 (2007)...................................................................30

*Meland v. Weber*,
2 F.4th 838 (9th Cir. 2021) .........................................................27

*Milavetz, Gallop & Milavetz, P.A. v. United States*,
541 F.3d 785 (8th Cir. 2008) .......................................................48

*Minn. Citizens Concerned for Life v. FEC*,
113 F.3d 129 (8th Cir. 1997) .................................................. 38, 39

*Missouri v. Biden*,
52 F.4th 362 (8th Cir. 2022) .................................................. 25, 30

*Nat'l League of Cities v. Usery*,
426 U.S. 833 (1976)...................................................................30

*Nat'l Wildlife Fed'n v. Agric. Stabilization & Conserv. Serv.*,
901 F.2d 673 (8th Cir. 1990) .......................................................24

*Nebraska v. Biden*,
52 F.4th 1044 (8th Cir. 2022) ......................................................45

*Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*,
   656 F.3d 580 (7th Cir. 2011) ........................................................................ 27, 36

*Planned Parenthood of Se. Pa. v. Casey*,
   505 U.S. 833 (1992) ........................................................................32

*Religious Sisters of Mercy v. Becerra*,
   55 F.4th 583 (8th Cir. 2022) ........................................................41

*School of the Ozarks, Inc. v. Biden*,
   41 F.4th 992 (8th Cir. 2022) ........................................................34

*Seila Law LLC v. CFPB*,
   592 U.S. 197 (2020) ........................................................................44

*Sierra Club v. EPA*,
   292 F.3d 895 (D.C. Cir. 2002) ....................................................25

*Smith v. Boyd*,
   945 F.2d 1041 (8th Cir. 1991) ....................................................44

*Spees v. James Marine, Inc.*,
   617 F.3d 380 (6th Cir. 2010) ........................................................9

*State Nat'l Bank of Big Spring v. Lew*,
   795 F.3d 48 (D.C. Cir. 2015) ............................................... 5, 26, 44

*Stilwell v. Off. of Thrift Supervision*,
   569 F.3d 514 (D.C. Cir. 2009) ............................................... 27, 36

*Straights & Gays for Equal. v. Osseo Area Schs.—Dist. No. 279*,
   471 F.3d 908 (8th Cir. 2006) ........................................................52

*Summers v. Earth Island Inst.*,
   555 U.S. 488 (2009) ........................................................................24

*Susan B. Anthony List v. Driehaus*,
   573 U.S. 149 (2014) ........................................................................32

*Tennessee v. Dep't of Educ.*,
   104 F.4th 577 (6th Cir. 2024) ........................................... 30, 31, 33, 36

*Tennessee v. U.S. Dep't of Educ.*,
  615 F. Supp. 3d 807 (E.D. Tenn. 2022) ................................................ 41

*Texas v. EEOC*
  933 F.3d 433 (5th Cir. 2019) ....................................................... *passim*

*Texas v. United States*,
  809 F.3d 134 (5th Cir. 2015) ............................................................ 30

*Turic v. Holland Hosp., Inc.*,
  85 F.3d 1211 (6th Cir. 1996) ............................................................ 49

*Turtle Island Foods, SPC v. Thompson*,
  992 F.3d 694 (8th Cir. 2021) ...................................................... 22, 32

*United States v. Texas*,
  599 U.S. 670 (2023) ........................................................................ 33

*Util. Air Regul. Grp. v. EPA*,
  573 U.S. 302 (2014) .............................................................. 6, 46, 50

*Wallace v. ConAgra Foods, Inc.*,
  747 F.3d 1025 (8th Cir. 2014) ............................................... 28, 29, 37

*Warth v. Seldin*,
  422 U.S. 490 (1975) ........................................................................ 23

*West Virginia v. EPA*,
  597 U.S. 697 (2002) .......................................................... 5, 25, 28, 50

*West Virginia v. EPA*,
  669 F. Supp. 3d 781 (D.N.D. 2023) ............................................. 30, 51

*Wilkinson v. United States*,
  440 F.3d 970 (8th Cir. 2006) ............................................................ 23

*Young v. United Parcel Serv., Inc.*,
  575 U.S. 206 (2015) .......................................................................... 9

## Federal Constitutional and Statutory Provisions

U.S. Const. amend. XIV, § 5 ......................................................... 6, 49

Consol. Appropriations Act of 2022, Pub. L. No. 117-103, §§ 506-507, 136 Stat. 49 ...............................................................................................................10

5 U.S.C.

§ 705 ...........................................................................................................4, 6

§ 706(2)(A), (C) .............................................................................................46

28 U.S.C.

§ 1291 ..............................................................................................................4

§ 1331 ..............................................................................................................4

§ 1346 ..............................................................................................................4

§ 2201 ..............................................................................................................4

29 U.S.C.

§ 2611(2)(A) ...................................................................................................9

§ 2612(a)(1)(D) ..............................................................................................9

42 U.S.C.

§ 2000e(k) .....................................................................................................48

§ 2000e-5 ...................................................................... 39, 40, 41, 42

§ 2000e-8 .......................................................................................................29

§ 2000gg, *et seq.* ................................................................... *passim*

§ 12112(a) ......................................................................................................9

**State Constitutional and Statutory Provisions**

Tenn. Const. Art. 1, § 36 .................................................................................7

Ark. Const. amend. LXVII, § 2 .......................................................................7

Ark. Code Ann. § 20-16-1602 .........................................................................7

Fla. Stat. § 286.31(2) ................................................................8

Tenn. Code Ann.

    § 5-9-115 ..........................................................................8

    § 6-56-113 ........................................................................8

    § 7-3-106 ..........................................................................8

    § 71-5-157 ........................................................................7

Utah Code Ann. § 76-7-331 ......................................................7

## Regulations

29 C.F.R.

    § 1601.15 ........................................................................40

    § 1601.16 ........................................................................40

    § 1636.3(a) ........................................................................5

    § 1636.3(b) ...................................................... 13, 15, 29, 31

    § 1636.3(h)(3)(i)(2) ....................................................... 15, 31

    § 1636.3(h)(3)(i)(3)(iii) ................................................. 15, 31

    § 1636.5(f) ...................................................................... 14, 32

Regulations to Implement the Pregnant Workers Fairness Act,
    88 Fed. Reg. 54,714 (Aug. 11, 2023) ...............................12

Implementation of the Pregnant Workers Fairness Act,
    89 Fed. Reg. 29,096 (Apr. 19, 2024) ........................... *passim*

## Other Authorities

167 Cong. Rec. H2346 (daily ed. May 14, 2021) ....................10

168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022) .................. 11, 12

168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022) ..................11

# INTRODUCTION

Nowadays, much federal law comes not through Congress, but via regulations adopted by unelected agencies. Bypassing democratic legislation often leaves regulated parties with little choice but to protect their interests through litigation. Congress's passage of the Pregnant Workers Fairness Act should have been a welcome exception. In late 2023, a broad, bipartisan coalition of lawmakers joined to adopt commonsense protections for pregnant workers. Along the way, chief congressional sponsors and other supporters stressed that the law did not require accommodations for abortion. The law's approach to promoting pregnancy garnered support from pro-life and religious groups.

That did not stop a bare majority of EEOC Commissioners from commandeering Congress's law to advance a pro-abortion agenda. In April 2024, that agency finalized a rule reading the PWFA to impose a controversial abortion-accommodation mandate that a dissenting Commissioner declared "not reasonable or defensible" and that a federal court has already enjoined. Under EEOC's Final Rule, Plaintiff States and other employers are now bound to affirmatively accommodate their employees' elective abortions—by providing paid time off, extra leave, and the like. *See* Implementation of the Pregnant Workers Fairness Act, 89 Fed. Reg. 29,096 (Apr. 19, 2024). But statutory interpretation confirms what common sense suggests: A broad coalition of Congress did not silently empower EEOC to force States into

facilitating abortions their laws and citizens oppose.

Tennessee and other Plaintiff States filed comments critiquing, and then a suit challenging, EEOC's imposition of its new abortion-accommodation mandate on the States as employers. Yet even as other States have obtained the same relief this suit seeks, Plaintiff States here find themselves subject to the Final Rule's unlawful mandates indefinitely. Not because the Rule is valid—even the district court agreed the States likely "have the better argument" about what the PWFA's text requires, App. 400; R. Doc. 63, at 26—but for a supposed lack of standing. The district court dismissed Plaintiff States' complaint on this basis *sua sponte*, even though the Final Rule directly regulates the States by mandating that they accommodate employee abortions and acknowledges that public employers must incur costs to come into compliance. This, without a pending motion to dismiss, without any notice to the States, and despite the irreconcilable conclusion in *Louisiana v. EEOC*, --- F. Supp. 3d ----, 2024 WL 3034006 (W.D. La. June 17, 2024), that the State Plaintiffs there had shown standing in three ways.

The district court's order leaves Plaintiff States no path to challenge a rule that expressly applies to them. This Court should reverse that result because the States plainly have standing. The Rule's binding requirement that States accommodate employee abortions—a requirement that contravenes their laws and employment policies—is enough to show standing. Holding otherwise would depart from the

settled standing principle that "[g]overnment regulations that require or forbid some action by the plaintiff almost invariably satisfy both the injury in fact and causation requirements." *FDA v. All. for Hippocratic Med.*, 602 U.S. 367, 382 (2024). The Final Rule also imposes compliance costs on States, who must now perform trainings, amend policies, and devote personnel time and resources to attain compliance. The Final Rule itself acknowledges such costs. And the States' declarations linked them to the abortion-accommodation mandate. Finally, the Final Rule inflicts distinct injuries by overriding the States' sovereign interest in protecting fetal life through constitutional, statutory, and workplace policies.

If the Court concludes that Plaintiff States have standing to pursue their challenge, it should also consider and grant the States' request for preliminary relief.

They are entitled to injunctive relief for the same reasons the *Louisiana* plaintiffs prevailed. The PWFA does not authorize the Final Rule's abortion-accommodation mandate—especially now that the district court's reliance on *Chevron* is off the table. And the States' irreparable harm is apparent. They will shoulder unrecoverable, here-and-now costs associated with bringing themselves into compliance with the abortion-accommodation mandate. And on top of that, the Final Rule harms the States' sovereign interests in protecting the unborn and regulating state employment by requiring them to publicize and provide elective-abortion accommodations to their own employees. Meanwhile, an injunction pending a judgment would not

harm EEOC, which insists requests for abortion accommodations will rarely arise. And the public interest favors holding EEOC to the law, not allowing EEOC to force the States to facilitate elective abortions against their—and Congress's—will. The States respectfully request relief now, rather than a ruling that would prolong their path to prevailing with re-litigation of issues the district court rejected.

This Court should reverse or, at a minimum, vacate and remand for further proceedings in light of its standing holding.

## JURISDICTIONAL STATEMENT

Plaintiff States invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1346, and 2201. App. 21; R. Doc. 1 ¶¶ 37-39. The district court entered a final judgment on June 14, 2024. App. 404; R. Doc. 64. The States filed a timely notice of appeal on June 18, 2024. App. 405; R. Doc. 65. This Court has jurisdiction under 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUES

1.     Plaintiff States moved below for a preliminary injunction and a 5 U.S.C. § 705 stay of the Final Rule, which regulates the States directly as employers. EEOC opposed the States' motion, arguing in part that the States lacked Article III standing. In reply, the States presented several grounds for standing to press their preliminary relief claims: (1) the Rule's legally binding requirement that the States take certain actions as to their employees and employee policies; (2) the economic

compliance costs that the States would incur, as the Rule acknowledged and undisputed declarations established; and (3) the Rule's injury to the States' sovereign interests in not facilitating elective abortions or altering their current employment policies to do so. The district court rejected each basis by relying on cases involving *nonregulated* parties. It then dismissed the States' entire action *sua sponte* without any claim-by-claim discussion—even as a different district court granted a separate group of States preliminary injunctive relief. *See Louisiana*, 2024 WL 3034006.

The first question presented is: Did the district court erroneously dismiss Plaintiff States' suit for lack of Article III standing? The answer is *yes*, and the most apposite cases are *West Virginia v. EPA*, 597 U.S. 697 (2002); *Iowa League of Cities v. EPA*, 711 F.3d 844 (8th Cir. 2013); *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48 (D.C. Cir. 2015); and *Louisiana v. EEOC*, 2024 WL 3034006.

2. The PWFA requires accommodation only of known limitations of "pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000gg-1(1). Before its passage, the PWFA's sponsors stressed that this language did not empower EEOC to impose abortion requirements on employers. Yet the Final Rule, adopted over the votes of two dissenting Commissioners and fifty thousand opposing comments, reads "related medical conditions" to require accommodating all abortion *procedures*, including non-"medical" ones done solely to terminate fetal life. *See* 89 Fed. Reg. at 29,183 (citing 42 U.S.C. § 2000gg-1); 29 C.F.R. § 1636.3(a).

The district court acknowledged that the States likely "have the better argument" about what the PWFA's text permits but posited that EEOC could perhaps prevail under *Chevron*'s now-defunct rule. As a result, EEOC's legally binding Final Rule will override States' employment policies by imposing a controversial and congressionally unauthorized requirement to accommodate elective abortions.

The second question presented is: Are the States, in light of their significant likelihood of success on the merits, their irreparable harm, and the balance of the equities, entitled to a preliminary injunction or § 705 stay? The answer is *yes*, and the most apposite cases are *Baker Elec. Co-op, Inc. v. Chaske*, 28 F.3d 1466 (8th Cir. 1994); *Louisiana v. EEOC*, 2024 WL 3034006; *Util. Air Regul. Grp. v. EPA*, 573 U.S. 302 (2014); and *Kentucky v. Biden*, 23 F.4th 585 (6th Cir. 2022). The most apposite statutory and constitutional provisions are 42 U.S.C. §§ 2000gg(4), 2000gg-1(1) and U.S. Const. amend. XIV, § 5.

## STATEMENT OF THE CASE

### A. Plaintiff States promote fetal life through state law and policy, including employment policies.

In 2022, the Supreme Court issued a landmark ruling that "the Constitution does not confer a right to abortion." *Dobbs v. Jackson Women's Health Org.*, 597 U.S. 215, 292 (2022). Now "the States may regulate abortion for legitimate reasons," and "courts cannot 'substitute their social and economic beliefs for the judgment of legislative bodies.'" *Id.* at 300 (citation omitted). Given this renewed

6

regulatory authority to address the "profound moral question" of abortion, *id.* at 302, most Plaintiff States have criminalized the provision of all or nearly all elective abortions, App. 11-20; R. Doc. 1 ¶¶ 14, 16, 18-26, 28-29, 31, 33-35. Indeed, many Plaintiff States have constitutional provisions memorializing pro-life policies or disclaiming any state right to abortion. *See, e.g.*, Ark. Const. amend. LXVIII, § 2 ("The policy of Arkansas is to protect the life of every unborn child from conception until birth."); Tenn. Const. Art. 1, § 36 ("Nothing in this Constitution secures or protects a right to abortion or requires the funding of an abortion."). Others have statutes reflecting their policies opposing abortion. *See, e.g.*, App. 15-16; R. Doc. 1 ¶¶ 22-25 (citing state laws).

The States' policies preventing abortion do not end at criminalization of the act itself, however. Plaintiff States also prohibit the use of state resources to facilitate abortions, including by barring the direct or indirect state funding of abortion. *E.g.*, Tenn. Code Ann. § 71-5-157; Ark. Code Ann. § 20-16-1602; Utah Code Ann. § 76-7-331. Along the same lines, no Plaintiff State offers employee leave for elective abortions. *See, e.g.*, App. 237; R. Doc. 17-1 ¶ 8.

Although Plaintiff States' jurisdiction ends at their borders, their interest in protecting the lives of their unborn citizens does not. Tennessee, for example, expressly prohibits its political subdivisions from expending funds "for travel to another state for the purpose of obtaining an abortion that would be a criminal abortion

if performed in [Tennessee]." Tenn. Code Ann. §§ 5-9-115, 6-56-113, 7-3-106; *see also* Fla. Stat. § 286.31(2) (similar).

The States also protect their pro-life interests through their employment policies. In many Plaintiff States, women comprise more than half of the state government workforce. *See* App. 236, 246, 286; R. Doc. 17-1 ¶ 5; R. Doc. 17-3 ¶ 5; R. Doc. 47-1 ¶ 5. At any given time, each State has pregnant employees. Historically, protections of working mothers in many Plaintiff States have extended beyond those required under federal law. To protect women's ability to safely continue employment while pregnant, for instance, many jurisdictions—including six Plaintiff States—require employers to accommodate worker pregnancies. *See* 89 Fed. Reg. at 29,170-71 tbl. 1 (citing laws). While the States regularly accommodate their employees' pregnancies, they do not accommodate or provide leave for elective abortions. *See, e.g.*, App. 237; R. Doc. 17-1 ¶ 8. Such policies reflect Plaintiff States' interest in promoting fetal life—an interest that is gravely undermined by requiring the States to facilitate elective abortions as a matter of state employment policy.

**B.    Congress passes the PWFA to accommodate pregnancy and childbirth, not abortions.**

The PWFA arose from the bipartisan desire to address federal and state gaps in legal protections for working mothers. Title VII, as amended by the Pregnancy Discrimination Act, for example, requires accommodations for pregnant women only when an employer provides comparable accommodations for reasons unrelated

to pregnancy.  *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206, 229-30 (2015).

Similarly, the Americans with Disabilities Act only requires accommodations for

pregnancies that otherwise qualify as a disability.  42 U.S.C. § 12112(a); *see Spees*

*v. James Marine, Inc.*, 617 F.3d 380, 396 (6th Cir. 2010) (collecting cases).  And the

Family and Medical Leave Act allows only certain pregnant or post-partum employ-

ees to take up to twelve weeks of unpaid leave.  29 U.S.C. §§ 2611(2)(A),

2612(a)(1)(D).

Against this backdrop, Senators Bob Casey and Bill Cassidy co-sponsored

and introduced the PWFA in April 2021.  The law aimed to provide simple, "com-

monsense accommodations"—like extra restroom breaks or permission to work

while seated—to pregnant workers.[1]  As proposed and enacted, the PWFA requires

employers "to make reasonable accommodations to the known limitations related to

the pregnancy, childbirth, or related medical conditions" of a pregnant worker.  42

U.S.C. § 2000gg-1(1).  In turn, the PWFA defines "known limitation" as a "mental

or physical condition."  *Id.* § 2000gg(4).  And the PWFA's anti-retaliation provision

likewise bars covered employers from taking adverse action against any employee

who requests an accommodation "to the known limitations related to [her]

---

[1] Senator Bob Casey, *Casey, Cassidy Introduce Bipartisan Pregnant Workers Fairness Act, Propose Protections Against Workplace Discrimination* (Apr. 29, 2021), https://perma.cc/J2NQ-J8AA.

pregnancy, childbirth, or related medical conditions." *Id.* § 2000gg-1(5).

The PWFA's text, structure, and history show that abortion coverage was off the table. The PWFA statute itself—unlike pregnancy-related provisions in Title VII—makes no mention of abortion procedures or otherwise suggests any intent to cover them. Indeed, although the PWFA cross-references Title VII eleven times, R. Doc. 47, at 10, it does not incorporate Title VII's amended pregnancy provision. And when the PWFA was passed as a part of the Consolidated Appropriations Act of 2022, Congress included longstanding prohibitions that limit the federal government's ability to mandate or fund abortions. Consol. Appropriations Act of 2022, Pub. L. No. 117-103, §§ 506-507, 136 Stat. 49, 496.

The history of the PWFA's enactment confirms Congress's intent to promote healthy pregnancies, not require accommodation of abortion. Senate sponsors, such as Senator Lisa Murkowski, for example, explained that the accommodations the Act requires would help "to ensure a healthy pregnancy and a healthy baby." *Supra* note 1. Other sponsors stressed that the PWFA meant women would not "have to choose" between continued employment and "their baby's health." 167 Cong. Rec. H2346 (daily ed. May 14, 2021) (statement of Rep. Carolyn Maloney); *see also* App. 24-25; R. Doc. 1 ¶¶ 51-53 (collecting statements). These aims allowed the PWFA to garner support from a bipartisan congressional coalition and pro-life groups like

the U.S. Conference of Catholic Bishops.

In the wake of *Dobbs*, congressional leaders reiterated that they did not intend the PWFA to override the States' regulation of abortion. Lead co-sponsor Senator Casey assured the Senate that under the PWFA, the EEOC "could not—could not—issue any regulation that requires abortion leave," "nor . . . require employers to provide abortions in violation of State law." 168 Cong. Rec. S7050 (daily ed. Dec. 8, 2022). His co-lead Senator Cassidy likewise "reject[ed] the characterization that [the PWFA] would do anything to promote abortion." *Id.* Senator Steve Daines echoed that statement on the day the PWFA passed, stating that "Senator Casey's statement reflects the intent of Congress" and that the PWFA "should not be misconstrued by the EEOC or Federal courts to impose abortion-related mandates on employers." 168 Cong. Rec. S10081 (daily ed. Dec. 22, 2022). A federal district court in Louisiana examining the same history concluded that it "unambiguously confirms that Congress specifically *did not* intend for the PWFA to require employers to accommodate abortion." *Louisiana*, 2024 WL 3034006, at *10.

## C.  EEOC proposes a Rule reading the PWFA to require employers to accommodate workers' elective abortions.

The PWFA charged EEOC with adopting regulations implementing the PWFA. 42 U.S.C. § 2000gg-3(a). Yet against the statute's text and history, EEOC proposed a rule that would require covered employers—including States—to accommodate elective abortions as a "medical condition" related to pregnancy.

11

Regulations to Implement the Pregnant Workers Fairness Act, 88 Fed. Reg. 54,714, 54,767 (Aug. 11, 2023) (Proposed Rule). The Proposed Rule did not explain how the ordinary meaning of "medical condition" could include a voluntary procedure to terminate a healthy pregnancy. Nor did it address the fact that its approach would force States as sovereigns to facilitate abortions that state laws and policies prohibit.

Over 54,000 comments opposed the Proposed Rule's abortion-accommodation mandate. *See* 89 Fed. Reg. at 29,104. Tennessee, joined by nineteen co-signing States, argued the Proposed Rule exceeded EEOC's statutory authority, violated the U.S. Constitution, and was arbitrary and capricious, including by failing to consider the costs to State employers of accommodating abortions. *See generally* App. 184-95; R. Doc. 1, at 178-89. Many commenters agreed. *See, e.g.*, App. 31-34; R. Doc. 1 ¶¶ 73-82 (collecting comments). Among these commenters was the U.S. Conference of Catholic Bishops, whose endorsement of the PWFA Senator Cassidy cited in support of arguing the PWFA "would [not] do anything to promote abortion." 168 Cong. Rec. S7050.

Many legislators, including Senator Cassidy, objected that the Proposed Rule's abortion-accommodation mandate "substituted [EEOC's] views on abortion for those of Congress."[2] The House Committee on Education and the Workforce

---

[2] Senator Bill Cassidy, Cmt. Letter 1 (Sept. 29, 2023), https://perma.cc/L4F8-K2K6.

similarly rebuked EEOC for "issu[ing] regulations contrary to the statute itself."[3] And citing *Dobbs*, Senator Braun urged EEOC to "harmonize" the Proposed Rule's Eleventh-Amendment implications with "all other relevant Constitutional text" by declining to "compel States or entities within States to violate law that protects life."[4] Senator Braun's concerns echoed those of the U.S. Department of Justice, which had earlier warned that PWFA's application to the States could violate Section 5 of the Fourteenth Amendment. *See* App. 196-200; R. Doc. 1, at 190-94.

### D. EEOC finalizes its abortion-accommodation mandate and acknowledges employers' resulting costs.

By a divided three-to-two vote, EEOC issued its Final Rule for publication on April 19, 2024. *See* Final Rule, 89 Fed. Reg. 29,096.

Against public and congressional opposition, and despite acknowledging the PWFA's silence on abortion, EEOC's Final Rule adopted its proposed mandate reading the term "related medical conditions" to require accommodating employees' elective abortions. *See id.* at 29,104 (discussing 29 C.F.R. § 1636.3(b)'s "inclusion of abortion in the definition of 'pregnancy, childbirth, or related medical conditions'" (capitalization altered)). The Rule also prohibits retaliation and coercion. *Id.*

---

[3] Representative Virginia Foxx, Cmt. Letter 1-2 (Oct. 10, 2023), https://perma.cc/YY42-FECW.

[4] Senator Mike Braun, Cmt. Letter 2 (Oct. 10, 2023), https://perma.cc/7YMZ-JXEF.

at 29,148 (discussing 29 C.F.R. § 1636.5(f)). The coercion provision, which EEOC interprets to cover conduct "reasonably likely to interfere with the exercise or enjoyment of PWFA rights," adds a content-based prohibition on "harassment" not found in the PWFA—seemingly to encompass actions that do not "rise to the level of unlawful retaliation." *Id.* at 29,148, 29,216 & n.185 (citing 29 C.F.R. § 1636.5(f)(2)). Whether a statement violates the anti-harassment provision "depend[s] on the language of the statement." *Id.* at 29,148.

Commissioner Lucas dissented from EEOC's "import[ation of] discrimination guidance into the PWFA" through its "expansive" construction of "pregnancy, childbirth, and related medical conditions." App. 208-09; R. Doc. 1, at 202-03. She noted that EEOC's cited cases in support of its interpretation were "not sufficient to show a 'settled consensus' such that Congress should be presumed to have known of and endorsed it." App. 207; R. Doc. 1, at 201. Furthermore, the ordinary meaning of "pregnancy, childbirth, and related medical conditions" is not ambiguous, meaning no resort to judicial canons is needed. App. 210-13; R. Doc. 1, at 204-07. Due to these errors, Commissioner Lucas explained that EEOC's construction of the PWFA is not "reasonable or defensible." App. 217; R. Doc. 1, at 211.

On its own terms, the Rule directly regulates the States as "covered employers." 89 Fed. Reg. at 29,113. The Rule "require[s]" Plaintiff States to implement new policies granting paid or unpaid leave to employees who seek to obtain

14

abortions, even when the abortion would be criminal if performed in the State or the making the accommodation would frustrate the State's compelling interest in protecting prenatal life. *Id.* (noting "most requests for accommodations related to an abortion will involve … the provision of leave"). The Final Rule requires *paid* leave as a reasonable accommodation for abortion when an employee has accrued paid leave, chooses to use it, and the employer allows employees to choose between paid and unpaid leave for other purposes. *Id.* at 29,185 (29 C.F.R. § 1636.3(h)(3)(i)(3)(iii)), 29,199 (Example #64). And in other cases, the Final Rule requires unpaid leave, *id.* at 29,184-85 (29 C.F.R. § 1636.3(h)(3)(i)(2)-(3)), even when an employer does not have an unpaid leave policy and an employee has been on the job for a short period of time, *see, e.g.*, *id.* at 29,203 (Example #34). Indeed, employers must accommodate even post-viability abortions. *Id.* at 29,183 (29 C.F.R. § 1636.3(b)) (covering abortion without limitation). And the Final Rule does not remedy the proposed rule's failure to estimate the costs of accommodating abortions with leave or otherwise. On top of imposing these affirmative obligations, the Rule makes clear that official state abortion policies that disagree with the Rule's treatment of abortion accommodation as a "right … protected by the PWFA" could violate the Rule's coercion provision "depend[ing] on the language of the statement." *Id.* at 29,141, 29,188.

Not only does the Rule require Plaintiff States to change their policies and

police their language, but the Rule itself acknowledges that it imposes implementation costs on the States as employers, "which *include*" but are not limited to "becoming familiar with the rule, posting new equal employment opportunity (EEO) posters, and updating EEO policies and handbooks." *Id.* at 29,164 (emphasis added), 29,176 (tbl. 9), 29,177; *see also, e.g.*, App. 237; R. Doc. 17-1 ¶ 9 (identifying implementation costs).

**E.    The lower court dismisses Plaintiff States' case as other States obtain an injunction.**

1.    EEOC published the Final Rule on April 19, 2024.  The States quickly sued to challenge the abortion-accommodation mandate.  *See* App. 7; R. Doc. 1 (Apr. 25, 2024).  The States raised several claims: (1) the Final Rule exceeds EEOC's authority under the PWFA by imposing an abortion-accommodation mandate inconsistent with the statutory text, structure, and history, App. 42-45; R. Doc. 1 ¶¶ 107-18; (2) the mandate unconstitutionally violates federalism limits, abrogates sovereign immunity without Fourteenth Amendment authorization, and infringes the speech rights of the States and their employees, App. 45-47; R. Doc. 1 ¶¶ 119-24; (3) EEOC acted arbitrarily and capriciously in adopting the Rule by failing to consider important aspects of the regulatory problem, App. 47-49; R. Doc. 1 ¶¶ 125-30; (4) EEOC's independent structure violates Article II and the separation of powers, App. 49-50; R. Doc. 1 ¶¶ 131-38; and (5) the States are entitled to a declaratory

judgment on each claim, App. 51; R. Doc. 1 ¶¶ 139-43.

The States then moved for a preliminary injunction and § 705 stay of the Final Rule based on Counts I-III of the Complaint. App. 220, R. Doc. 17. The motion and supporting memorandum did not address Count IV regarding EEOC's structure. *Id.*; *see also* R. Doc. 18. EEOC countered in part by claiming the States lacked standing, but it never moved to dismiss. The district court nonetheless entered dismissal for lack of standing *sua sponte* on June 14, 2024—shortly before the Final Rule's effective date. App. 375-404; R. Doc. 63, 64. The district court did not provide the States with any notice of dismissal or discuss the States' standing to pursue their structural constitutional claim.

The district court held that Plaintiff States lacked standing, despite acknowledging "the norm" that directly regulated parties may seek relief against rules that harm them. App. 381, 389; R. Doc. 63, at 7, 15. The district court deemed the prospect of enforcement of the Final Rule too "speculative" because enforcement would arise from employee complaints and ultimately result in a referral by EEOC to the Department of Justice. App. 381-83; R. Doc. 63, at 7-9. It also held that the States had not established redressability or traceability because enjoining the EEOC from enforcing the Rule or staying the Rule would not "eliminate" DOJ's and private plaintiffs' ability to "enforce[] … the statute." App. 383-87; R. Doc. 63, at 9-13.

The district court also rejected the States' allegation that the Rule harmed

them directly by requiring immediate compliance costs. It found these harms "spec-ulative," too, even though the States' declarations linked such costs with the chal-lenged abortion-accommodation mandate and EEOC acknowledged the identified costs were one-time administrative costs that the Rule imposed. App. 387-89; R. Doc. 1, at 13-15.

The district court then denied the States' request for preliminary relief as moot but still engaged with some of the preliminary-injunction factors. First, it rejected the States' irreparable harm showing because the States did not "quantify" their com-pliance costs and because it found no "conflict" between the States' pro-life policies and requiring the States to facilitate elective abortions. App. 391-94; R. Doc. 1, at 17-20. Second, despite concluding that the States likely "have the better argument on the text" of the PWFA because "[a]bortion doesn't fit into the ordinary meaning of condition," the district court posited that EEOC's interpretation warranted "def-erence." App. 395, 400-01; R. Doc. 1, at 21, 26-27. Finally, after dismissing any "need [to] balance the equities," the Court rejected "issuing a nationwide injunction of the entire EEOC regulation" without considering whether it could narrowly enjoin the challenged provisions. App. 402; R. Doc. 1, at 28.

The court accordingly dismissed Plaintiff States' suit for lack of jurisdiction and denied their motion as moot. *Id.*; *see also* App. 404; R. Doc. 64. The States appealed this dismissal and denial. App. 405; R. Doc. 65. They also sought an

injunction pending appeal, which the district court denied in an opinion that reiterated its original reasoning. R. Doc. 67; App. 415-18; R. Doc. 72, at 1-4. This Court denied the States' request for relief pending appeal in an unreasoned, single-judge order. Order (June 25, 2024), Entry ID 5407144.

2. Meanwhile, the U.S. District Court for the Western District of Louisiana granted two States preliminary relief in a substantially similar challenge to the Final Rule's abortion-accommodation provisions. *Louisiana*, 2024 WL 3034006. The *Louisiana* court rejected nearly identical arguments about standing and the merits to those EEOC raised here, holding: (1) the States established regulatory, compliance-cost, and sovereign injuries, and (2) the "EEOC has exceeded its statutory authority to implement the PWFA and, in doing so, both unlawfully expropriated the authority of Congress and encroached upon the sovereignty of the States Plaintiffs." *Id.* at *1, 4-5.

## SUMMARY OF THE ARGUMENT

**I.** The district court erred in dismissing the States' claims for lack of standing despite the States' status as directly regulated parties and the here-and-now harms the Final Rule inflicts.

**A.** The States pleaded three distinct injuries that each sufficed to advance this action under Article III—a conclusion the *Louisiana* court reached in granting relief against the Final Rule to a separate group of States. *First*, the States showed

19

their self-evident standing as the "objects" of the Final Rule's unlawful regulatory obligations—a dynamic the district court acknowledged typically provides standing. *Second*, the States pleaded and demonstrated via undisputed declarations that the Final Rule's challenged abortion-accommodation mandate would cause them immediate compliance costs. *Third*, the States adequately alleged sovereign injuries arising from the Final Rule's coercive effect on State employers to change policies that do not currently allow, much less require, express accommodation of abortions that are illegal under state law. Each of these injuries is traceable to the Final Rule's imposition of an extra-textual abortion-accommodation mandate and redressable by the States' requested relief.

**B.** The district court's standing dismissal arrived after a series of wrong legal turns. At each standing prong, the district court relied on cases involving *non-regulated* plaintiffs, causing it to reject out of hand the States' straightforward argument that the Final Rule injured them by compelling them to take compliance actions. And contrary to settled administrative law principles, the district court concluded that even these Rule-based injuries must be traceable to the threat of future enforcement action by the EEOC, not simply to the Rule itself. Defying this Court's case law on redressability, the district court also held that any relief must redress other potential injuries the States could suffer outside the Rule-based injuries they established. The district court's analysis risks insulating unlawful agency rules from

challenge so long as an agency purports to ground its interpretation in a statute. That is not the law.

**C.**     Compounding those errors, the district court dismissed the complaint *sua sponte* without analyzing standing on a claim-by-claim basis. As a result, the district court dismissed the States' structural constitutional claim even though the Supreme Court has held regulation by an unlawful body to be a per se harm that a party can press before enforcement. The district court's dismissal of the States' complaint for lack of standing should be reversed. At a minimum, the district court should have given the States notice of the prospective standing dismissal and an opportunity to amend their pleadings.

**II.**     Should this Court agree that the States have standing, it may advance to resolving the States' motion for preliminary relief. Entry of that relief is appropriate now because the States overwhelmingly satisfy the governing factors.

**A.**     The district court's statutory reasoning highlights the States' strong probability of prevailing on their claim that the Final Rule's abortion-accommodation mandate is unlawful. As the *Louisiana* court put it: in light of the PWFA's text, context, and history, Congress could not "reasonably be understood to have granted the EEOC the authority to interpret the scope of the PWFA in a way that imposes a nationwide mandate on both public and private employers—irrespective of … *Dobbs*—to provide workplace accommodation for the elective abortions of

employees." 2024 WL 3034006, at *10.

The district court's principal point to the contrary rested on applying deference under *Chevron, U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837 (1984). That path no longer exists, and EEOC never sought deference regardless.

**B.**     The remaining factors likewise favor issuing the same preliminary relief against the Rule that other States now enjoy. The Final Rule irreparably harms the States by putting them in a catch-22 between violating the new abortion-accommodation mandate or violating state law and policies reflecting legitimate protections for fetal life and the States' prerogative as employers. The States' unrecoverable compliance costs compound these sovereign injuries, which the district court dismissed largely by repeating its incorrect standing analysis. Nor would an injunction harm EEOC, which has insisted that abortion accommodations will rarely arise. And it would serve the public interest by holding EEOC to the law. Rather than prolong the States' path to meaningful relief, this Court should reverse the district court's flawed analysis and remand with instructions to enter relief against the unlawful abortion-accommodation mandate pending further review.

## LEGAL STANDARD

This Court reviews questions of law de novo, *Turtle Island Foods, SPC v. Thompson*, 992 F.3d 694, 699 (8th Cir. 2021), providing "no special deference to the

district court," *Lankford v. Sherman*, 451 F.3d 496, 504 (8th Cir. 2006). Dismissal for lack of Article III standing is one such issue of law that this Court reviews de novo. *Wilkinson v. United States*, 440 F.3d 970, 977 (8th Cir. 2006). At the pleading stage, the Court views all allegations and factual inferences in the light most favorable to the plaintiff and "accept[s] as valid the merits of [the plaintiff's] claims." *FEC v. Cruz*, 596 U.S. 289, 298 (2022); *Gardner v. First Am. Title Ins. Co.*, 294 F.3d 991, 993 (8th Cir. 2002) (citing *Warth v. Seldin*, 422 U.S. 490, 499 (1975)).

In determining whether to issue a preliminary injunction, the district court weighs four factors: (1) the threat of irreparable harm to the movant, (2) the balance of harms, (3) the probability of success on the merits, and (4) the public interest. *Cigna Corp. v. Bricker*, 103 F.4th 1336, 1342 (8th Cir. 2024) (citing *Dataphase Sys., Inc. v. C L Sys., Inc.*, 640 F.2d 109, 113 (8th Cir. 1981) (en banc)). "[T]he probability of success factor is the most significant." *Home Instead, Inc. v. Florance*, 721 F.3d 494, 497 (8th Cir. 2013). But the district court "must balance all factors" in determining whether preliminary relief should issue; otherwise, it abuses its discretion. *Lankford*, 451 F.3d at 503.

## ARGUMENT

### I. The States Are Directly Regulated Parties with Article III Standing to Challenge EEOC's Final Rule.

In *sua sponte* dismissing the States' complaint, the district court mistakenly held that employers subject to the Final Rule's illegal regulatory obligations

nonetheless lacked Article III standing to seek any form of relief. The district court erred on each standing prong, and its reasoning would improperly insulate the EEOC and other agencies from a range of APA challenges. To top it off, the district court erroneously dismissed the complaint without analyzing standing on a claim-by-claim basis or providing notice and an opportunity to amend.

### A. The States established three injuries traceable to the Final Rule and redressable by its vacatur and the States' other requested relief.

A plaintiff establishes Article III standing "by showing that [it] has suffered an injury in fact that is fairly traceable to the challenged conduct of the defendant and that will likely be redressed by a favorable decision." *Am. Farm Bureau Fed'n v. EPA*, 836 F.3d 963, 968 (8th Cir. 2016). The alleged injury need not be more than "an identifiable trifle." *Nat'l Wildlife Fed'n v. Agric. Stabilization & Conserv. Serv.*, 901 F.2d 673, 677 (8th Cir. 1990). A plaintiff must simply establish a sufficient "personal stake" in the case's outcome to justify the court's exercise of jurisdiction. *Conners v. Gusano's Chi. Style Pizzeria*, 779 F.3d 835, 840 (8th Cir. 2015) (quoting *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009)). The States established each prong by showing distinct regulatory, financial, and sovereign injuries, all of which are traceable to EEOC's promulgation of the Final Rule itself and redressable by their requested relief.

1. To begin, the Final Rule injures the States by subjecting them to a new regulatory requirement they oppose—a basis States used to show standing to

challenge the Final Rule in *Louisiana*. 2024 WL 3034006, at \*4. The Supreme Court reaffirmed in *West Virginia v. EPA* that a party who is the "object" of a regulatory requirement has standing to challenge the agency action imposing it. 597 U.S. 697, 719 (2022) (quoting *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561-62 (1992)); *see also All. for Hippocratic Med.*, 602 U.S. at 382. The Court's standing analysis was simple: the challenged rule "injure[d] the States" because it imposed a "requirement that they more stringently regulate power plant emissions within their borders." *Id.* In such cases, standing is "self-evident," *Sierra Club v. EPA*, 292 F.3d 895, 900-01 (D.C. Cir. 2002); "[n]o additional proof is necessary when a rule purports to impose legal obligations directly on a state plaintiff," *Kentucky v. FHA*, --- F. Supp. 3d ----, 2024 WL 1402443, at \*3 (W.D. Ky. Apr. 1, 2024).

This Court likewise recognized in *Iowa League of Cities v. EPA* that parties "have a concrete interest … in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them." 711 F.3d 844, 871 (8th Cir. 2013). Contrary to the district court's reading (App. 389; R. Doc. 63, at 15), this interest may be injured *both* by agency action that defies procedural requirements *and* by action exceeding an agency's statutory or constitutional authority. *Iowa League*, 711 F.3d at 871; *West Virginia*, 597 U.S. at 719-20; *Lujan*, 504 U.S. at 561-62; *see also Missouri v. Biden*, 52 F.4th 362, 370 (8th Cir. 2022) (explaining this interest is independent of any procedural harm). And establishing that a plaintiff is the object

of a "regulatory obligation[]" satisfies all three standing prongs. *Iowa League*, 711 F.3d at 870-71. At that point, there is "little question" that the agency's action "caused" the claimed "injury" and that "a judgment preventing … the action will redress it." *Lujan*, 504 U.S. at 561-62; *see also Iowa League*, 711 F.3d at 870.

*State National Bank of Big Spring v. Lew*, 795 F.3d 48 (D.C. Cir. 2015), exemplifies this standing analysis. There, a bank challenged the constitutionality of the Consumer Financial Protection Bureau, which had "impose[d] disclosure requirements" on banks engaging in certain activities. *Id.* at 51-53. CFPB provided a "safe harbor," but banks like the challenger had to "incur [compliance] costs" to "stay within [it]." *Id.* Then-Judge Kavanaugh, writing for the D.C. Circuit, found the standing analysis straightforward: "There is no doubt that the Bank is regulated by the Bureau. Under *Lujan*, the Bank therefore has standing to challenge the constitutionality of the Bureau." *Id.*

Many other cases recognize "self-evident" standing to challenge an action or entity that "constrain[s] what regulated parties may lawfully do." *Arizona v. EPA*, 77 F.4th 1126, 1131 (D.C. Cir. 2023).[5] Indeed, courts recognize that even parties who are not the express object of agency or other governmental action—but who

---

[5] *E.g.*, *Corbett v. Transp. Sec. Admin.*, 19 F.4th 478, 483-84 (D.C. Cir. 2021) (holding a frequent flyer had standing to challenge a TSA mask requirement as a "directly regulated party"); *Bonacci v. Transp. Sec. Admin.*, 909 F.3d 1155, 1159-60 (D.C. Cir. 2018) (holding a pilot had standing to challenge TSA policies for expedited screening of pilots).

nonetheless suffer harm from an agency requirement—have standing to challenge it.[6]  Applying similar reasoning in *Texas v. EEOC*, the Fifth Circuit held that a regulated state employer had Article III standing to challenge binding EEOC action that "applie[d] to state employers … by its own terms" and "increased [the plaintiff State's] regulatory burden."  933 F.3d 433, 446-47 (5th Cir. 2019); *see also Louisiana*, 2024 WL 3034006, at *4 (citing *Texas* in support of finding regulatory-injury-based standing).

As these cases suggest, Plaintiff States have constitutional standing.  The Final Rule directly regulates covered employers, including the States and state agencies, and imposes many obligations on them.  *E.g.*, 89 Fed. Reg. 29,096, 29,112, 29,183.  EEOC itself "agrees that State and local governments … are required to provide accommodations," including abortion accommodations, under its interpretation of the PWFA.  *Id.* at 29,113.  The Final Rule thus directly imposes a new federal-law requirement on the States—one that is also inconsistent with current state policies, which do not allow, much less require, paid or unpaid leave to obtain abortions

---

[6] *E.g.*, *Meland v. Weber*, 2 F.4th 838, 845-46 (9th Cir. 2021) (holding shareholders that were "one of the objects" of challenged statute had standing to challenge it); *Owner-Operator Indep. Drivers Ass'n, Inc. v. Fed. Motor Carrier Safety Admin.*, 656 F.3d 580, 585-86 (7th Cir. 2011) (holding truck drivers were practically the "objects of the action" and thus had standing to challenge requirement that they install electronic monitoring device in their trucks); *Stilwell v. Off. of Thrift Supervision*, 569 F.3d 514, 518-19 (D.C. Cir. 2009) (holding rule that "agency adopt[ed] … with the purpose … of economically helping regulated Party A and hindering Party B" could be challenged by "Party B").

absent medical need.[7]  In short, the States are "object[s]" of the Final Rule, including the provisions they challenge, *West Virginia*, 597 U.S. at 719 (quoting *Lujan*, 504 U.S. at 561), and are "currently operating" in a manner "inconsistent with" the Final Rule's requirements, *Iowa League*, 711 F.3d at 870.  Their injuries thus flow from the Final Rule itself and would be redressed by staying and ultimately vacating the Rule.  *Iowa League*, 711 F.3d at 870; *see also Louisiana*, 2024 WL 3034006, at *4.

2.  Independently, the States established constitutional standing based on the Final Rule's imposition of compliance costs arising from the challenged abortion accommodation provisions.  For standing purposes, "a loss of even a small amount of money is ordinarily an 'injury'"—even "a few pennies" suffice.  *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685, 693 (8th Cir. 2017) (citation omitted); *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014).

Here, EEOC acknowledges one-time compliance for state employers will cost up to $171 per employee implementing the Rule per covered entity and will entail "rule familiarization, posting new EEO posters, … updating EEO policies and hand-books," and other activities.  89 Fed Reg. 29,177 (estimating 2.25 hours of work at a $76.03-per-hour wage).  EEOC's contrary argument rests on the dubious

---

[7] *See, e.g.*, App. 237, 242, 246, 271; R. Doc. 17-1 ¶ 8; R. Doc. 17-2 ¶ 8; R. Doc. 17-3 ¶ 7; R. Doc. 17-8 ¶ 7.

proposition that the States' human resources professionals will spend no time or resources discussing, updating materials and training about, or implementing the first-ever federal workplace requirement to accommodate elective abortions. That defies both common sense and the States' declarations, which confirm that they will need to undertake such activities, *including in association with* implementing abortion-accommodation policies they do not currently have. *See, e.g.*, App. 237, 242, 246-47; R. Doc. 17-1 ¶ 9; R. Doc. 17-2 ¶ 9; R. Doc. 17-3 ¶ 8.

Further, as employers, the States have a statutory obligation to "make and keep … records relevant to the determinations of whether unlawful employment practices have been or are being committed." 42 U.S.C. § 2000e-8 (incorporated by 42 U.S.C. § 2000gg-2). Thus, they will have to document any failure to adhere to the practices the Final Rule newly defines as unlawful, including failure to accommodate an employee abortion. 29 C.F.R. §§ 1636.3(b), 1636.4(a).

These and the States' other costs and compliance obligations "alone" demonstrate injury-in-fact. *Louisiana*, 2024 WL 3034006, at *4; *see also Iowa League*, 711 F.3d at 870; *Wallace*, 747 F.3d at 1029. Such costs flow from the Rule and would be redressed by staying and then vacating it. *Iowa League*, 711 F.3d at 870.

3. The Final Rule's intrusion on the States' sovereign interests also confers standing. Following *Dobbs*, the States again have a constitutional prerogative in limiting abortion to further their interest in protecting fetal life through policies

consistent with that regulation. *Louisiana*, 2024 WL 3034006, at *4-5; *see also Dobbs*, 597 U.S. 215 (2022). Regardless of the "special solicitude" to which they are entitled in the standing analysis, *Missouri*, 52 F.4th at 369 (citing *Massachusetts v. EPA*, 549 U.S. 497, 521-23 (2007)), "states have Article III standing when" sovereign or "'quasi-sovereign rights [are] actually invaded or threatened.'" *Tennessee v. Dep't of Educ.*, 104 F.4th 577, 591-93 (6th Cir. 2024) (citation omitted); *accord Texas v. EEOC*, 933 F.3d at 446-47; *West Virginia v. EPA*, 669 F. Supp. 3d 781, 797-98 (D.N.D. 2023), *appeal voluntarily dismissed*, No. 23-2411, 2023 WL 8643059 (8th Cir. Oct. 10, 2023).

States have sovereign or quasi-sovereign interests in protecting the health and well-being of their citizens and defending areas within their control against federal government interference. *Kentucky v. Biden*, 23 F.4th at 598-99; *see also Texas v. United States*, 809 F.3d 134, 153-155 (5th Cir. 2015). One such "undoubted" area of sovereign regulation is the States' employer-employee relationships. *Nat'l League of Cities v. Usery*, 426 U.S. 833, 845 (1976), *overruled on other grounds by Garcia v. San Antonio Met. Tr. Auth.*, 469 U.S. 528 (1985); *accord Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006) (holding government employers "need a significant degree of control over their employee's words and actions"). An agency may injure a State as a sovereign by "pressur[ing it] to abandon its laws and [employment]

policies." *Texas v. EEOC*, 933 F.3d at 447.

The Final Rule inflicts this injury by interfering with the States' regulation of abortion and state workplaces. The Final Rule compels the States as employers to change their current human resources policies—which "express certain [pro-life] values" by not offering abortion leave—to require abortion leave. *Id.* Contrary to the district court's reading (App. 393; R. Doc. 63, at 19), the Final Rule requires *paid* leave in some cases, 89 Fed. Reg. at 29,185 (§ 1636.3(h)(3)(i)(3)(iii)), 29,199 (Example #64), and unpaid leave in others, *id.* at 29,184-85 (§ 1636.3(h)(3)(i)(2)-(3)), 29,203 (Example #34), which itself imposes costs on employers, *see, e.g.*, App. 237; R. Doc. 17-1 ¶ 9. And as in *Texas v. EEOC*, the Final Rule, by requiring abortion accommodations, declares the States' current contrary policies "unlawful," 89 Fed. Reg. at 29,130; 29 C.F.R. § 1636.3(b)—policies that reflect State bars on facilitating and funding elective abortions. This interference with duly enacted State laws and policies confers "a sovereign interest to sue the United States." *Tennessee*, 104 F.4th at 591 & n.11.

Moreover, forcing the States to implement a federal-law mandate to promote and facilitate abortion access contravenes the States' compelling interest in protecting the lives of their unborn citizens. This is especially true because the Final Rule requires employers to accommodate abortions at any stage, *see* 29 C.F.R. § 1636.3(b) (defining "related medical condition" broadly to cover any abortion)—

31

even at stages beyond which the pre-*Dobbs* Supreme Court considered States' interest in protecting human life compelling. *See, e.g.*, *Planned Parenthood of Se. Pa. v. Casey*, 505 U.S. 833, 870-71 (1992) (affirming States' "legitimate interest" in restricting abortions after viability). EEOC has never disavowed that reading, which underscores the radical nature of the agency's attempt to commandeer the PWFA to promote a broad abortion-access agenda.

The States have moreover alleged an intention to engage in "messaging that aim[s] to protect fetal life and discourage abortion." App. 46-47; R. Doc. 1 ¶ 123. Such messaging, which may include statements by State employers, as well as State employees, is at least "arguably" proscribed by the Final Rule's provisions prohibiting interference with a right "protected by the PWFA." *Turtle Island Foods*, 992 F.3d at 699 (quoting *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014)) (discussing standing to defend protected speech); 89 Fed. Reg. at 29,188 (29 C.F.R. § 1636.5(f)(2)); *see also* 89 Fed. Reg. at 29,218 (Example #76). And the Rule itself recognizes that even the States' general policy statements may violate the Rule "depend[ing] on the language of the statement." 89 Fed. Reg. at 29,141. This speech infringement likewise injures the States' sovereign interests.

The Final Rule's patent interference with States' sovereign constitutional, statutory, and employment policies, as well as their protection of their citizens' right to life, is an additional Article III injury—one that vacatur of the Final Rule and an

injunction and declaration against EEOC's reading would redress. *Louisiana*, 2024 WL 3034006, at *4-5; *see Tennessee*, 104 F.4th at 591.

**B.     The district court erred at each prong of the standing analysis.**

The district court's standing analysis erred from start to finish.

1.     At the outset, the district court mainly relied on inapposite cases involving plaintiffs who were not the object of a regulatory obligation. "[T]he absence of coercive power over [a] plaintiff makes a difference," however: "'much more is needed' to establish standing" when a plaintiff challenges the regulation of "'someone else'" than when the plaintiff is the "'object'" of the challenged regulation. *United States v. Texas*, 599 U.S. 670, 678 & n.2 (2023) (quoting *Lujan*, 504 U.S. at 562). Here, the States challenge the exercise of "coercive power" over them, not third parties, so the district court's central cases are not on point.

*FDA v. Alliance for Hippocratic Medicine* (cited by App. 381, 389; R. Doc. 63, at 7, 15), for example, dealt with "*unregulated parties* who s[ought] to challenge FDA's regulation *of others*." 602 U.S. at 385 (first emphasis added). Likewise, *Clapper v. Amnesty International USA* (cited by App. 383, 389; R. Doc. 63, at 9, 15) rejected standing based on plaintiffs' "speculative fear" stemming from surveillance of "other individuals." 568 U.S. 398, 410-11, 416 (2013). And in *California v. Texas* (cited by App. 388-89; R. Doc. 63, at 14-15), the State plaintiffs challenged a statutory requirement that regulated "state residents," not the States themselves. 593

U.S. 659, 674-75 (2021).

The district court erroneously relied in particular on this Court's analysis in *School of the Ozarks, Inc. v. Biden* (cited by App. 381-83, 385, 389; R. Doc. 63, at 7-9, 11, 15). There, this Court determined that the challenged agency document was at most "an internal directive to HUD agencies, not a regulation of private parties. The [action did] not direct [the challenger] to do anything." 41 F.4th 992, 999 (8th Cir. 2022). Indeed, the Court noted that the plaintiff there was "specifically exempted" from the statutory provision the challenged agency memorandum purported to interpret. *Id.* at 998. As in the other cases, the obstacle to standing was thus that the alleged injuries were not traceable to the governmental action itself but to the anticipated effect of that action on *others*. *Id.* at 999; *see also All. for Hippocratic Med.*, 602 U.S. at 391-93; *Clapper*, 568 U.S. at 416; *California*, 593 U.S. at 678.

But EEOC's Final Rule here facially "requires" States to accommodate employee abortions. 89 Fed. Reg. 29,096, 29,101, 29,112-13; *id.* at 29,107 ("abortion-related *requirements*" (emphasis added)). That mandate forces the States to change their current human relations policies—which do not offer abortion-specific accommodations—and imposes attendant compliance costs. The States' resulting injuries are thus traceable to the challenged action itself—the Final Rule—not to fallout from the speculative actions of third parties.

The district court also mistakenly found that the States "press[ed] no

34

procedural challenge," which it suggested might have sustained the States' "'object of the action' theory of standing." App. 389; R. Doc. 63, at 15. But the States claimed (App. 47-49; R. Doc. 1 ¶¶ 127-29) that EEOC acted arbitrarily and capriciously by failing to address their comments about the scope of state pregnancy protections and several other important aspects of the rulemaking problem. Those are procedural challenges about the flawed conduct of the rulemaking, *see, e.g.*, *Ashton v. U.S. Copyright Off.*, 310 F. Supp. 3d 149, 157 (D.D.C. 2018)—ones that the States have clear standing to pursue under this Court's precedents, *see Iowa League of Cities*, 711 F.3d at 870-71. Indeed, in pressing their interest in a procedurally correct rulemaking, the States did not need not to "meet[] the normal 'standards for redressability and immediacy,'" *City of Clarkson Valley v. Mineta*, 495 F.3d 567, at 569 (8th Cir. 2007) (citation omitted)—a fact the district court did not address.

2. Relatedly, the district court erred by finding that the States' sovereign- and compliance-related injuries depend on future enforcement. *See, e.g.*, App. 381-83, 388-89; R. Doc. 63, at 7-9, 14-15; App. 416; R. Doc. 72, at 2. They do not.

The Final Rule is a "legal norm that binds the class regulated by statute." *Chamber of Com. v. Fed. Elec. Comm'n*, 69 F.3d 600, 603 (D.C. Cir. 1995). It thus requires the States to conform their current employee policies to the Final Rule's requirement that employers offer paid and unpaid leave for employee abortions.

Courts have repeatedly rejected the claims of federal agencies, including the

EEOC, that they "must have a strict rule *now* to get [regulated parties] to be more compliant," but that "at the same time [their] rules are not meant to change anyone's immediate behavior enough to confer standing to challenge that regulation." *Owner-Operator Indep. Drivers*, 656 F.3d at 586; *see also Stilwell*, 569 F.3d at 518 (agreeing it was "more than a little ironic that [the agency] would suggest Petitioners lack standing" while "label[ing one] Petitioner … a prime example" of "the very problem the Rule was intended to address"); *Texas v. EEOC*, 933 F.3d at 448 (similar); *cf. Tennessee*, 104 F.4th at 590 n.9. Courts have done so even when regulated parties faced no "present danger of an enforcement proceeding" but "felt constrained" by a rule's legally binding nature "to alter their prior practice." *Chamber of Com.*, 69 F.3d at 603; *see also Owner-Operator Indep. Drivers*, 656 F.3d at 586.

Similar reasoning applies here. EEOC has not "advise[d] the [States] to ignore the rule"; nor could it. *Chamber of Com.*, 69 F.3d at 603. To the contrary, EEOC has repeatedly stated that the Final Rule is needed to promote employer conformity with its interpretation of the PWFA's requirements. *E.g.*, 89 Fed. Reg. at 29,141. And it "agrees" that States "are covered employers and are required to provide accommodations under the PWFA," as interpreted by EEOC. *Id.* at 29,113. Indeed, its amici have echoed the urgency of allowing the Final Rule's abortion-accommodation mandate to go into effect to require employers in States with abortion restrictions to grant their employees leave to travel out of State to obtain one.

R. Doc. 51-1, at 6-13. The Final Rule's regulatory effect on the States is direct, immediate, and independently sufficient to show standing.

It is no surprise, then, that the Final Rule expressly acknowledges that all regulated parties must imminently undertake compliance obligations that will impose associated costs apart from future requests for accommodations or enforcement. *See* 89 Fed. Reg. at 29,164. The economic burden the Final Rule imposes constitutes a classic injury in fact that "independently" supports standing. *Louisiana*, 2024 WL 3034006, at \*4; *see also Iowa League*, 711 F.3d at 870. The district court dismissed these costs as "speculative" because the States had not quantified them. App. 388; R. Doc. 63, at 14. But plaintiffs do not have to attach a damages report to their complaint. They must "general[ly] alleg[e]" some concrete injury. *City of Clarkson Valley*, 495 F.3d at 569 (quoting *Lujan*, 504 U.S. at 561). And the States established based on the Final Rule itself and their declarations that there were financial costs associated with implementing the abortion-accommodation mandate. This showing sufficed for standing under this Court's precedents. *See, e.g.*, *Wallace*, 747 F.3d at 1029. *Cf.* App. 388-89; R. Doc. 63, at 14-15; App. 416; R. Doc. 72, at 2. Accepting the district court's contrary quantification rule would depart from other circuits by demanding a pre-suit accounting exercise that perversely compounds parties' unrecoverable compliance costs.

3.    The district court also erred in holding that the States did not establish

traceability and redressability because of the statutory enforcement scheme. App. 383-84; R. Doc. 63, at 9-15. First, as discussed, the States needed only to trace their injuries to the Final Rule, *see Iowa League*, 711 F.3d at 870, which they did.

Nor did the States' standing depend on the correctness of their merits claim that the Rule, not the PWFA, unlawfully imposed the abortion-accommodation mandate. *Cf.* App. 384-85; R. Doc. 63, at 10-11. "For standing purposes, [courts] accept as valid the merits of [plaintiffs'] legal claims." *Cruz*, 596 U.S. at 298. So the district court should have "assume[d]" that the abortion-accommodation provision exceeds EEOC's statutory authority and is otherwise unlawful. *Id.* Instead, it accepted an argument identical to the one the Fifth Circuit rightly rejected in *Texas v. EEOC*— that the underlying statute, not the EEOC action purporting to implement it, imposed the challenged requirement, thus precluding traceability. *Cf.* 933 F.3d at 440, 448 & n.30. Affirming on that ground would depart from settled APA practice by short circuiting challenges to unlawful rules if the agency purports to interpret a statute.

Second, the district court was incorrect that any order must entirely "eliminate" every potential injury to establish redressability. App. 384-85; R. Doc. 63, at 9, 11, 13, 14-15. This Court has held that "a party 'satisfies the redressability requirement when he shows that a favorable decision will relieve a discrete injury to himself. He need not show that a favorable decision will relieve his *every* injury.'" *Minn. Citizens Concerned for Life v. FEC*, 113 F.3d 129, 131 (8th Cir. 1997)

(quoting *Larson v. Valente*, 456 U.S. 228, 243 n.15 (1982)). Thus, in *281 Care Committee v. Arneson*, this Court rejected defendants' argument that plaintiffs could not establish redressability because (a) the statute provided for criminal prosecution by defendants *and* the filing of civil complaints, and (b) "criminal prosecution c[ould ]not occur until the civil complaint [was] resolved." 638 F.3d 621, 631 (8th Cir. 2011). The court held that enjoining the defendants, who were responsible for "enforcing the criminal portion of the statute[,] … would redress a discrete portion of plaintiffs' alleged injury in fact," thus establishing redressability. *Id.*

Redressability is even more clearly satisfied here. An order staying and ultimately vacating the Rule would redress each of the "discrete injur[ies]" to the States flowing from the Rule itself. *Minn. Citizens Concerned for Life*, 113 F.3d at 131. Even accepting that a private plaintiff or DOJ could sue the States should the States prevail here, *but see infra* pp. 39-41, that prospect would not negate the effect of an injunction or other relief in redressing the States' Rule-based injuries. *See 281 Care Committee*, 638 F.3d at 631.

Finally, the district court's analysis of the enforcement scheme failed on its own terms because the States' requested relief would not permit any enforcement. *All* paths to enforcement of the PWFA and Final Rule run *through EEOC.* 42 U.S.C. §§ 2000gg-2(a)(1), 2000e-5(e)(1); *see also* App. 278-80; R. Doc. 34-2 ¶¶ 3, 5-8; EEOC, *What Laws Does EEOC Enforce?*, https://perma.cc/MH99-X8BZ ("EEOC

has enforcement responsibility for the … [PWFA.]"). A complainant cannot initiate a private enforcement action unless EEOC and DOJ decline to take timely action and either issues a right to sue letter. 42 U.S.C. § 2000e-5(f). But before DOJ or any private plaintiff gets involved, EEOC can refer charges to DOJ for potential litigation against the States only if: (1) EEOC has not administratively closed the charge because, for example, the charge was untimely, (2) EEOC has not dismissed the charge on the merits and issued a right to sue letter, and (3) EEOC has been unable to resolve the charge through conciliation. *See id.*; App. 278-80; R. Doc. 34-2, at 2-4. Based on EEOC's own statistics, it unsuccessfully conciliates—and thus refers—just 1.2% of charges. App. 280; R. Doc. 34-2, at 4.

The upshot is that in nearly all cases involving a denied abortion accommodation, the States' requested vacatur, injunctive, and declaratory relief would prevent enforcement. Such relief would stop EEOC from all pre-suit enforcement to "eliminate any such alleged unlawful employment practice." 42 U.S.C. § 2000e-5(b); *see also id.* § 2000gg-2; 29 C.F.R. §§ 1601.15, 1601.16(a), (c), (d). The *Louisiana* court, for example, preliminarily enjoined EEOC from "initiating any investigation into claims" based on denial of an elective abortion accommodation and from "issuing any Notice of Right to Sue with respect to the same." 2024 WL 3034006, at *13. The requested relief also would prevent EEOC from referring any such cases to DOJ because enjoining EEOC from implementing or enforcing the Rule would require

EEOC to dismiss charges involving denied abortion accommodations and would prevent it from engaging in any enforcement activities, including referral of charges to DOJ.  Contrary to the district court's maverick interpretation (App. 16; R. Doc. 1, at 10), moreover, § 2000e-5(f) does not automatically require EEOC to refer a charge to DOJ after thirty days but *allows* the Commission to sue thirty days after a charge is filed and provides no equivalent time period for EEOC's referring a charge against a governmental employer to DOJ.  § 2000e-5(f).  And even if granting the States' requested relief somehow could not prevent referral to DOJ, it beggars belief that DOJ would not treat as binding a judgment declaring EEOC's interpretation of PWFA illegal.

It would be passing strange if EEOC's pre-referral enforcement activities— activities that resolve all but a fraction of all charges it receives—did not support standing.  In fact, other courts have consistently recognized plaintiff employers' standing to sue the EEOC in pre-enforcement challenges, even though EEOC enforcement begins with an employee filing a charge.  *See Tennessee v. U.S. Dep't of Educ.*, 615 F. Supp. 3d 807, 825 (E.D. Tenn. 2022) (rejecting argument otherwise), *aff'd on other grounds*, 104 F.4th 577 (6th Cir. 2024); *see also Religious Sisters of Mercy v. Becerra*, 55 F.4th 583, 607 (8th Cir. 2022).  The D.C. Circuit has even held that a private party's ability to enforce a rule's interpretation of a statute, even if the agency itself declines to enforce its rule, supports a party's standing to challenge the

rule. *See Chamber of Com.*, 69 F.3d at 603-04. That makes sense because, unlike the challenged memorandum in *School of the Ozarks*, a final rule legally binds regulated parties. *Cf. Auer v. Robbins*, 519 US. 452, 461-63 (1997).

The PWFA enforcement scheme is meaningfully different, moreover, from the one the district court highlighted in *Digital Recognition Network, Inc. v. Hutchinson*. App. 385; R. Doc. 63, at 10 (citing 803 F.3d 952 (8th Cir. 2015)). There, the court found that a party who had *no* role in enacting and "*no* power to enforce" the challenged statute could not have caused an injury flowing from the statute. *Id.* at 961 (emphasis added) (citation omitted); *cf. Haaland v. Brackeen*, 599 U.S. 255, 293 (2023) (cited by App. 385; R. Doc. 63, at 11) (similar). By contrast, here, the States have sued the agency that adopted the Final Rule that imposes legal obligations on them, one that claims the power to enforce the relevant statutory scheme and its regulations, *see, e.g.*, 89 Fed. Reg. at 29,097, 29,189 ("enforces"), and one upon whom the relevant statutory scheme grants enforcement authority, *see, e.g.*, 42 U.S.C. §§ 2000gg-2, 2000e-5. EEOC's referral-based enforcement structure does not authorize it to adopt binding rules with impunity.

### C. Outright dismissal of the States' action was improper.

The district court also erred by *sua sponte* dismissing the States' complaint without assessing standing as to each of their claims and without providing notice

and an opportunity to amend.

1.    A party might have standing to press some types of claims but not others.  So courts must assess standing on a claim-by-claim basis.  *See Davis v. FEC*, 554 U.S. 724, 734 (2008); *Bernbeck v. Gale*, 829 F.3d 643, 649 n.4 (8th Cir. 2016).  A district court errs by dismissing an entire complaint for lack of Article III standing without conducting a claim-specific analysis.  *See, e.g.*, *Garmong v. Tahoe Reg. Planning Agency*, 806 F. App'x 568, 571 (9th Cir. 2020).

Here, the States' complaint raised several distinct claims.  Three challenged the Final Rule's substance and one challenged the constitutionality of EEOC's unlawful structure.  And the States sought injunctive and declaratory relief.  App. 52; R. Doc. 1, at 46.  The district court nonetheless mistakenly applied the same standing analysis to dismiss the action entirely—even without discussing the States' structural constitutional challenge, which the motion for preliminary relief did not assert.  *See* App. 42-51; R. Doc. 1 ¶¶ 107-43.  Yet even accepting the district court's incorrect analysis of the statutory enforcement scheme, the States at minimum had standing to pursue their claim that EEOC's putative status as an "independent federal agency" violates Article II and the separation of powers.  *See* App. 49-50; R. Doc. 1 ¶¶ 132-38.  The Supreme Court recently held that a statutory scheme—even one that expressly calls for agency review in the first instance—cannot insulate an agency from challenge to the constitutionality of its structure in federal district court.  *See Axon*

*Enters. v. FTC*, 598 U.S. 175, 195-96 (2023).  The purpose of such suits is to allow parties to obtain relief before an agency enforcement action, since the very fact of unlawful regulation inflicts a distinct form of "here-and-now injury."  *Id.* at 903 (quoting *Seila Law LLC v. CFPB*, 592 U.S. 197, 212 (2020)).  Because EEOC's Final Rule regulates the States, the States may challenge EEOC's unlawful independent structure.  *Cf. State Nat'l Bank*, 795 F.3d at 53 (Kavanaugh, J.).

2.    The district court also erred by dismissing the States' complaint *sua sponte* without providing notice or an opportunity to amend.  A district court may dismiss a complaint *sua sponte* "only where plaintiff cannot possibly prevail and amendment would be futile."  *Bucklew v. Lombardi*, 783 F.3d 1120, 1127 (8th Cir. 2015); *see also Smith v. Boyd*, 945 F.2d 1041, 1043 (8th Cir. 1991) ("[D]istrict courts should provide pre-dismissal notice.").

Here, the States' allegations and supporting declarations more than sufficed to "support the[ir] claim[s]" at the pleading stage.  *City of Clarkson Valley*, 495 F.3d at 576 (quoting *Lujan*, 504 U.S. at 561).  Even accepting the court's own standing reasoning, which faulted the States for not providing sufficient factual detail in support of compliance costs and for suing EEOC alone, amendment would not have been futile.  Indeed, EEOC opposed the States' motion for preliminary relief on standing grounds but did not ask the court to dismiss the complaint, much less move for dismissal.  R. Doc. 34, at 11-21, 50; *see also id.* at 21 (arguing plaintiffs "have

44

not otherwise shown a likelihood of success on their claims"). In fact, the district court's opinion, especially its failure to consider standing claim by claim, makes clear that the court conflated the standing allegations needed to support preliminary relief with those required to sustain the complaint. The district court's dismissal without notice—and without leave to amend—was reversible error. Thus, at minimum, this case should be remanded with instructions to grant the States leave to amend.

## II. This Court Should Consider and Grant the States' Requested Preliminary Relief Against the Final Rule.

For the reasons given above, this Court should reverse the district court's dismissal for lack of standing. On doing so, this Court would have the discretion to consider the States' request for preliminary relief. The States respectfully submit that expeditious resolution of that request—rather than a remand for re-litigation of the issues by the district court—would be appropriate in light of the procedural history. *Cf. Nebraska v. Biden*, 52 F.4th 1044, 1046-47 (8th Cir. 2022).

Should this Court opt to address the States' argument for preliminary relief against the Final Rule, it should hold that relief is warranted. Most significantly, the district court erred in analyzing the purely legal question of the States' substantial likelihood of success on the merits. As the *Louisiana* court and dissenting Commissioner Lucas explained, EEOC's Final Rule flouts the PWFA's text, structure, purpose, and history. The district court's reliance on deference as a potential path for

upholding the Rule was implausible then and is impossible now that *Chevron* is no longer. The district court also incorporated its erroneous standing analysis in analyzing irreparable harm and thus failed to perform the requisite balancing of the equities—a balancing that supports granting a preliminary injunction.

### A. The States are likely to succeed on the merits.

Despite deeming it moot, the district court analyzed the States' statutory authority claim at length. App. 394-402; R. Doc. 63, at 20-28. Contrary to the district court's "tentative conclusion" (App. 400; R. Doc. 63 at 26), the States established a substantial probability of success on that claim. And the district court's erroneous analysis undoubtedly "affected the ultimate balancing of the factors," *H&R Block, Inc. v. Block, Inc.*, 58 F.4th 939, 951 (8th Cir. 2023) (citation omitted), which did not occur at all, App. 402; R. Doc. 63, at 28.

The Administrative Procedure Act requires courts to invalidate agency action that is "not in accordance with law" or is "in excess of statutory … authority." 5 U.S.C. § 706(2)(A), (C). "[A]n agency may not rewrite clear statutory terms to suit its own sense of how the statute should operate." *Util. Air Regul. Grp.*, 573 U.S. at 328. Here, EEOC's abortion-accommodation mandate flouts the PWFA's text, structure, and history. *Louisiana*, 2024 WL 3034006, at *9-10.

1.      The PWFA requires employers to accommodate any "known limitation"—defined as a "physical or mental condition"—that is "related to, affected by,

or arising out of pregnancy, childbirth, or related medical conditions." 42 U.S.C. §§ 2000gg-1(1); 2000gg(4). The PWFA's text does not reference abortion, and abortion's inclusion would have collapsed the law's bipartisan support. *See Louisiana*, 2024 WL 3034006, at *8. Nor does abortion fall within the ordinary meaning of the term "related medical condition[]"—*i.e.*, "states of health or illness," not "medical procedures, treatments, and issues." Lucas Dissent, App. 211-12; R. Doc. 1 at 205-06 & nn.7-9; *accord EEOC v. Houston Funding II, Ltd.*, 717 F.3d 425, 428 n.4 (5th Cir. 2013). As EEOC admitted below, App. 337-38; R. Doc. 62, at 49:20-50:3, even if an abortion were a "condition," the word "medical" does not cover elective abortions performed to terminate fetal life but refers to "the diagnosis and treatment of disease and maintenance of health," R. Doc. 18, at 16 (citation omitted). And a procedure that terminates an unborn child is not "pregnancy" or "childbirth."

2. The statutory context and history also support adopting the States' plain-meaning interpretation of the PWFA's text. Congress, including in provisions passed with the PWFA, has uniformly barred funding for elective abortions. *See* App. 187; R. Doc. 1, at 181 n.1 (collecting statutes). And "while the PWFA explicitly cross-references provisions of Title VII" some eleven times, it "does not incorporate Title VII's amended pregnancy provision." *Louisiana*, 2024 WL 3034006, at *9; *see also* R. Doc. 47, at 10. Consistent with this structural indication, "the legislative history unambiguously confirms that Congress specifically *did not* intend for

the PWFA to require employers to accommodate abortion." *Louisiana*, 2024 WL 3034006, at \*10; *see supra* pp. 8-11.

The district court acknowledged that the States "have the better argument on the text." App. 400; R. Doc. 63, at 26. Yet the court concluded that EEOC's cited Title VII decisions showed the PWFA's language was "susceptible to more than one reasonable interpretation" and thus "ambiguous." *Id.* From there, the district court reasoned that EEOC's interpretation triggered *Chevron* "deference." *Id.* at 21, 27. This analysis was wrong for several reasons.

For one, the Supreme Court has since overruled *Chevron* and instructed that, moving forward, the APA requires courts to "exercise[ their] independent judgment" to resolve statutory ambiguities. *Loper Bright Enters. v. Raimondo*, 144 S. Ct. 2244, 2265 (2024). And EEOC did not even "invok[e] *Chevron*" (R. Doc. 34, at 32), obviating any need "to consider whether any deference might be due," *HollyFrontier Cheyenne Refin., LLC v. Renewable Fuels Ass'n*, 594 U.S. 382, 394 (2021).

For two, the PWFA is not ambiguous. Contra the district court, "mere disagreement" over the meaning of a statute "does not prove ambiguity." *Milavetz, Gallop & Milavetz, P.A. v. United States*, 541 F.3d 785, 791 (8th Cir. 2008) (citation omitted), *rev'd in part on other grounds*, 559 U.S. 229 (2010). And EEOC's Title VII decisions are not persuasive anyway. Title VII contains different language and references abortion, unlike the PWFA. 42 U.S.C. § 2000e(k); *see also* R. Doc. 18,

at 19-20; R. Doc. 47, at 8-10.  What is more, EEOC's cases conflict with this Circuit's precedents reading Title VII's language more narrowly.  *See* R. Doc. 18, at 18-19 (discussing *Krauel v. Iowa Methodist Med. Ctr.*, 95 F.3d 674, 679 (8th Cir. 1996); *In re Union Pac. R.R. Emp. Pracs. Litig.,* 479 F.3d 936, 942 (8th Cir. 2007)). EEOC's main cases also rest on abortion's *former* status as a protected constitutional right.  *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996); *see also* 89 Fed. Reg. at 29,110 & n.93.  And EEOC's argument that Congress silently ratified these opinions' interpretation of Title VII language "is not credible," given that the PWFA's enactors had *Dobbs* "fresh" in their minds.  *Louisiana*, 2024 WL 3034006, at *10.

For three, even if the PWFA were ambiguous, the Rule's constitutional defects would counsel against EEOC's interpretation of the PWFA.  *See* R. Doc. 18, at 24-28.  Yet the district court overlooked these constitutional problems.  That includes the States' argument that applying an abortion-accommodation mandate to States would exceed the federal government's power under Section 5 of the Fourteenth Amendment.  *See id.* at 26; U.S. Const. amend XIV, § 5.  This, despite the U.S. Department of Justice letter warning of a similar problem, App. 197-200; R. Doc. 1, at 191-94—one EEOC still has not meaningfully addressed on the merits.

3.      The district court focused most of its interpretive firepower on the applicability of the major questions doctrine.  App. 395-98; R. Doc. 63, at 21-24.  But

the district court did not dispute that abortion is "one of the most important social, religious, and political issues of our time." *Louisiana*, 2024 WL 3034006, at *9; *see also West Virginia*, 597 U.S. at 721-23.

Instead, the district court downplayed the significance of the Final Rule's novel abortion requirements as involving mere "workplace accommodations" that only "touch the edge of a particularly controversial issue." App. 397, 416; R. Doc. 63, at 23; R. Doc. 72, at 2. In doing so, it ignored amici's argument that the abortion-accommodation mandate is "critical … given the massive 'abortion deserts' created by *Dobbs*." R. Doc. 51-1, at 6. It is hard to think of issues with greater political significance than requiring most employers nationwide to facilitate their employees' elective abortions. EEOC's unprecedented step to do so here thus required "clear congressional authorization," not the mere ambiguity the district court identified. *West Virginia*, 597 U.S. at 723 (citation omitted).

The district court also ignored overwhelmingly clear legislative history against EEOC's reading of the PWFA's plain text. Instead, the district court posited allegedly improbable applications of the text's plain meaning. App. 401-02; R. Doc. 63, at 27-28. But neither agencies nor courts maintain "power to revise clear statutory terms," even if they "turn out not to work in practice" in outlier cases. *Util. Air Regul. Grp.*, 573 U.S. at 327. Nor, in all events, did any of the district court's hypotheticals rebut the States' main concern about the Final Rule's compelling the States

to knowingly accommodate purely elective abortions.

## B.     The remaining factors favor relief.

The balance of the equities—harm to the States, harm to EEOC, and the public interest—decisively favors entry of preliminary relief against the Final Rule.  Yet the district court's mistaken understanding of the States' harm showing meant it did not engage in the requisite balancing.  That flaw independently warrants reversal and highlights the lack of support for continuing to deny the States relief.

*Irreparable harm to the States.*  The district court erred by holding that the sovereign and monetary harms that support Plaintiff States' standing do not show irreparable harm.  *Cf. Louisiana*, 2024 WL 3034006, at *13.  In the Eighth Circuit, a movant shows a "threat of irreparable harm" if it lacks an "adequate remedy at law," *Baker Elec. Co-op*, 28 F.3d at 1472-73, and the States satisfied this standard. To begin, "invasions of state sovereignty … likely cannot be economically quanti-fied, and thus cannot be monetarily redressed," making them irreparable.  *Kentucky v. Biden*, 23 F.4th at 611 n.19; *see also West Virginia v. EPA*, 669 F. Supp. 3d at 807 (collecting cases).  And the States have shown that the Final Rule injures them as sovereigns by requiring them to change their abortion leave policies for State em-ployees, in defiance of the States' broader pro-life policies.  *See, e.g.*, *Texas v. EEOC*, 933 F.3d at 446-47.  Likewise, the Rule's muddling of Plaintiff States' anti-abortion messaging "unquestionably constitutes irreparable injury."  *Straights &*

*Gays for Equal. v. Osseo Area Schs.—Dist. No. 279*, 471 F.3d 908, 913 (8th Cir. 2006) (citation omitted).  And because the States' Rule-compliance costs are unrecoverable, such harms are also irreparable.  *Iowa Utils. Bd. v. FCC*, 109 F.3d 418, 426 (8th Cir. 1996); *Kentucky v. Biden*, 57 F.4th 545, 556 (6th Cir. 2023).

    <u>No prejudice to EEOC or the public interest</u>.  Preliminary relief would not meaningfully harm EEOC or the public interest.  Plaintiff States' "extremely high likelihood of success on the merits is a strong indicator that a preliminary injunction would serve the public interest" in stopping "unlawful agency action." *League of Women Voters v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016).  So, too, the public interest favors permitting States to enforce their duly enacted "abortion-related laws and policies" that, like the PWFA, aim to promote healthy pregnancies rather than end them. *Louisiana*, 2024 WL 3034006, at *13.

    By contrast, EEOC has "no interest in enforcing" an unlawful provision of the Final Rule.  *Dakotans for Health v. Noem*, 52 F.4th 381, 392 (8th Cir. 2022).  This is especially so given that EEOC insisted that its abortion-accommodation mandate is "narrow" and will have little-to-no impact in practice.  *E.g.*, R. Doc. 34, at 7, 11-12.  The district court accepted that characterization when docking the States for failing to show "some imminent flow of accommodation requests for elective abortions." App. 417; R. Doc. 72, at 3.  Having benefitted from downplaying the effect of its abortion-accommodation mandate, however, EEOC cannot now pivot to

arguing that a pause would materially affect the agency or public more broadly.

Any injunction would "in no way limit[]" the ability of covered employers to "choose to implement" abortion-accommodation policies. *Louisiana*, 2024 WL 3034006, at *13. Nor would enjoining the *abortion* provisions disturb the Final Rule's protections for *pregnancy*—a factor the district court overlooked. *Compare id.* (enjoining only the requirement that "covered entities provide accommodation for the elective abortions of employees that are not necessary to treat a medical condition related to pregnancy"), *with* App. 402; R. Doc. 63, at 28. EEOC suffers no cognizable harm from a limited injunction stopping it from enforcing a rule-based abortion-accommodation requirement that Congress explicitly rejected.

## CONCLUSION

For the above reasons, this Court should reverse the district court's final judgment dismissing the States' suit for lack of standing. At minimum, the final judgment order should be vacated, and the case should be remanded with instructions to grant the States leave to amend their complaint. Should this Court reverse the standing analysis, it should proceed to grant the States' request for entry of preliminary relief against the Final Rule's abortion-accommodation mandate pending review.

July 18, 2024

Respectfully submitted,

JONATHAN SKRMETTI
Tennessee Attorney General
& Reporter

TIM GRIFFIN
Arkansas Attorney General

*/s/ Whitney D. Hermandorfer*
J. MATTHEW RICE
  Solicitor General
WHITNEY D. HERMANDORFER
  Director of Strategic Litigation
REED N. SMITH
VIRGINIA N. ADAMSON
  Strategic Litigation Counsel
JOSHUA D. MINCHIN
  Honors Fellow, Office of the
  Solicitor General

*/s/ Nicholas J. Bronni*
NICHOLAS J. BRONNI (2016097)
  Solicitor General
DYLAN L. JACOBS (2016167)
  Deputy Solicitor General
ASHER STEINBERG (2019058)
  Senior Assistant Solicitor General

OFFICE OF THE TENNESSEE
  ATTORNEY GENERAL
P.O. Box 20207
Nashville, Tennessee 37202
Tel.: (615) 741-8726
Whitney.Hermandorfer@ag.tn.gov

*Counsel for Tennessee*

OFFICE OF THE ARKANSAS
  ATTORNEY GENERAL
323 Center Street, Suite 200
Little Rock, Arkansas 72201
Tel.: (501) 682-6302
Nicholas.Bronni@arkansasag.gov

*Counsel for Arkansas*

STEVE MARSHALL
  Attorney General

/s/ *Edmund G. LaCour, Jr.*
EDMUND G. LACOUR, JR.
Solicitor General
OFFICE OF THE ALABAMA
ATTORNEY GENERAL
501 Washington Avenue
P.O. Box 300152
Montgomery, AL 36130
Tel.: (334) 242-7300
Fax: (334) 353-8400
Edmund.LaCour@
  AlabamaAG.gov

*Counsel for Alabama*

ASHLEY MOODY
  Attorney General

/s/ *Natalie Christmas*
NATALIE CHRISTMAS
Senior Counselor
OFFICE OF THE FLORIDA ATTORNEY
GENERAL
PL-01, The Capitol
Tallahassee, FL 32399
Tel.: (850) 414-3300
Natalie.christmas@myfloridale-
gal.com

*Counsel for Florida*

CHRISTOPHER CARR
  Attorney General

/s/ *Stephen Petrany*
STEPHEN PETRANY
Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
GEORGIA
Georgia Department of Law
40 Capitol Square SW
Atlanta, Georgia 30334
Tel.: (404) 458-3408
spetrany@law.ga.gov

*Counsel for Georgia*

RAÚL R. LABRADOR
  Attorney General

/s/ *Joshua N. Turner*
JOSHUA N. TURNER
Chief of Constitutional Litigation and
Policy
ALAN M. HURST
Solicitor General
OFFICE OF THE IDAHO ATTORNEY GEN-
ERAL
P.O. Box 83720
Boise, Idaho 83720
Tel: (208) 334-2400
josh.turner@ag.idaho.gov

*Counsel for Idaho*

THEODORE E. ROKITA
  Attorney General

/s/ *James A. Barta*
JAMES A. BARTA
Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
INDIANA
IGC South, Fifth Floor
302 W. Washington St.
Indianapolis, Indiana 46204
Tel.: (317) 232-0709
James.Barta@atg.in.gov

*Counsel for Indiana*

KRIS W. KOBACH
  Attorney General

/s/ *Erin Gaide*
ERIN GAIDE
Assistant Attorney General
OFFICE OF THE KANSAS ATTORNEY
GENERAL
120 SW 10th Ave.
Topeka, KS 66612
Tel.: (785) 296-7109
erin.gaide@ag.ks.gov

*Counsel for Kansas*

BRENNA BIRD
  Attorney General

/s/ *Eric H. Wessan*
ERIC H. WESSAN
Solicitor General
OFFICE OF THE IOWA ATTORNEY GEN-
ERAL
1305 E. Walnut Street
Des Moines, Iowa 50319
Tel.: (515) 281-5164
Eric.Wessan@ag.iowa.gov

*Counsel for Iowa*

ANDREW BAILEY
  Attorney General

/s/ *Joshua M. Divine*
JOSHUA M. DIVINE
Solicitor General
MISSOURI ATTORNEY GENERAL'S
OFFICE
Post Office Box 899
Jefferson City, MO 65102
Tel.: (573) 751-1800
Fax (573) 751-0774
josh.divine@ago.mo.gov

*Counsel for Missouri*

MICHAEL T. HILGERS
  Attorney General

/s/ *Lincoln J. Korell*
LINCOLN J. KORELL
Assistant Solicitor General
OFFICE OF THE ATTORNEY GENERAL OF
NEBRASKA
2115 State Capitol
Lincoln, Nebraska 68509
Tel.: (402) 471-2682
lincoln.korell@nebraska.gov

*Counsel for Nebraska*

DREW WRIGLEY
  Attorney General

/s/ *Philip Axt*
PHILIP AXT
Solicitor General
OFFICE OF NORTH DAKOTA ATTORNEY
GENERAL
600 E. Boulevard Ave., Dept. 125
Bismarck, ND 58505
Tel.: (701) 328-2210
pjaxt@nd.gov

*Counsel for North Dakota*

GENTNER DRUMMOND
  Attorney General

/s/ *Garry M. Gaskins, II*
GARRY M. GASKINS, II
Solicitor General
OKLAHOMA OFFICE OF THE ATTORNEY
GENERAL
313 NE 21st Street,
Oklahoma City, OK 73105
Tel.: 405-312-2451
Garry.Gaskins@oag.ok.gov

*Counsel for Oklahoma*

ALAN WILSON
  Attorney General

/s/ *Joseph D. Spate*
JOSEPH D. SPATE
Assistant Deputy Solicitor General
OFFICE OF THE ATTORNEY GENERAL
STATE OF SOUTH CAROLINA
1000 Assembly Street
Columbia, SC 29201
Tel.: (803) 734-3371
josephspate@scag.gov

*Counsel for South Carolina*

Marty J. Jackley
  Attorney General

/s/ *Grant M. Flynn*
Grant M. Flynn
Assistant Attorney General
Office of the Attorney General
State of South Dakota
1302 E. Hwy. 14, Suite #1
Pierre, SD 57501
Tel.: (605) 773-3215
grant.flynn@state.sd.us

*Counsel for South Dakota*


Patrick Morrisey
  Attorney General

/s/ *Michael R. Williams*
Michael R. Williams
Solicitor General
Office of the West Virginia Attorney General
State Capitol Complex
Building 1, Room E-26
Charleston, WV 25305
Tel.: (304) 558-2021
Fax: (304) 558-0140
michael.r.williams@wvago.gov

*Counsel for West Virginia*

Sean Reyes
  Attorney General

/s/ *Stanford E. Purser*
Stanford E. Purser
Solicitor General
Utah Attorney General
160 East 300 South, 6th floor
PO Box 140856
Salt Lake City, UT 84114-0856
Tel.: (801) 366-0100
spurser@agutah.gov

*Counsel for Utah*

# CERTIFICATE OF COMPLIANCE

I hereby certify, in accordance with Rule 32(g) of the Federal Rules of Appellate Procedure, that this brief complies with the type-volume requirements of Rule 32(a)(7) because, excluding the parts of the document exempted by Rule 32(f), this brief contains 12,826 words as determined by the word-counting feature of Microsoft Word. *See* Fed. R. App. P. 32(a)(7)(B).

I further certify that this brief complies with the typeface requirements of Federal Rule 32(a)(5) and the type-style requirements of Federal Rule 32(a)(6) because it has been prepared in a proportionally spaced typeface using Microsoft Word in 14-point Times New Roman font.

This brief further complies with the electronic-filing requirements of Local Rule 28A(h)(2) because it was scanned for viruses using Windows Defender and no virus was detected.

*s/ Whitney D. Hermandorfer*
Whitney D. Hermandorfer

## CERTIFICATE OF SERVICE

I certify that on July 18, 2024, I electronically filed the foregoing with the Clerk of Court for the United States Court of Appeals for the Eighth Circuit by using the CM/ECF system. I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I further certify that, within five days of receiving notice that the brief has been accepted for filing, I will file ten paper copies of the foregoing brief with the Clerk of Court by overnight delivery and will serve one paper copy on Appellee by overnight delivery at the address listed below:

Brian M. Boynton
Michael S. Raab
Stephanie Marcus
Urja Mittal
Kelsey Fraser
U.S. Department of Justice
Civil Division
950 Pennsylvania Avenue NW
Washington, DC 20530-0001
(202) 353-4895
Urja.mittal@usdoj.gov

/s/ *Whitney D. Hermandorfer*
Whitney D. Hermandorfer