No. 24-2249

# IN THE UNITED STATES COURT OF APPEALS
# FOR THE EIGHTH CIRCUIT

_____

STATES OF TENNESSEE, ARKANSAS, ALABAMA, FLORIDA, GEORGIA, IDAHO, INDIANA, IOWA, KANSAS, MISSOURI, NEBRASKA, NORTH DAKOTA, OKLAHOMA, SOUTH CAROLINA, SOUTH DAKOTA, UTAH, and WEST VIRGINIA,

Plaintiffs-Appellants,

v.

EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,

Defendant-Appellee.

_____

On Appeal from the United States District Court
for the Eastern District of Arkansas

_____

## BRIEF FOR APPELLEE

_____

BRIAN M. BOYNTON
  _Principal Deputy Assistant Attorney General_

MICHAEL S. RAAB
STEPHANIE R. MARCUS
URJA MITTAL
KELSEY FRASER
  _Attorneys, Appellate Staff_
  _Civil Division, Room 7248_
  _U.S. Department of Justice_
  _950 Pennsylvania Avenue NW_
  _Washington, DC 20530_
  _(202) 353-4895_

## SUMMARY OF THE CASE
## AND STATEMENT REGARDING ORAL ARGUMENT

The Pregnant Workers Fairness Act requires employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee."  42 U.S.C. § 2000gg-1(1).  The Equal Employment Opportunity Commission issued an implementing regulation earlier this year.  Plaintiffs—17 states in their capacities as employers—filed suit to challenge the rule to the extent it requires employers to provide workplace accommodations for employees seeking abortions in certain circumstances and sought preliminary relief.

The district court concluded that plaintiffs lack standing because they had not shown any actual or imminent injury that is traceable to the Commission's rule or would be redressable by the relief requested.  The court therefore dismissed the complaint and denied plaintiffs' preliminary-injunction motion as moot.  Plaintiffs challenge the dismissal on appeal.

On June 25, 2024, this Court directed the Clerk to set this case for oral argument during the Court's September 2024 session.  The government stands ready to present argument and respectfully requests 15 minutes of argument time per side.

SUMMARY OF THE CASE AND STATEMENT
REGARDING ORAL ARGUMENT

STATEMENT OF JURISDICTION ............................................................... 1

STATEMENT OF THE ISSUE ................................................................... 1

STATEMENT OF THE CASE ................................................................... 2

     A.     Statutory Background ................................................................ 2

            1.     The Pregnant Workers Fairness Act ................................. 2

            2.     The Commission's Rule ................................................... 5

     B.     Prior Proceedings ................................................................... 6

SUMMARY OF ARGUMENT .................................................................. 9

ARGUMENT ......................................................................................... 13

I.     Plaintiffs have not established standing to sue. ................................... 13

     A.     Plaintiffs have not shown injury-in-fact. .................................. 14

            1.     Plaintiffs have not established actual or imminent injury. ............ 14

            2.     The hypothetical costs of complying with the statute do not establish plaintiffs' standing to challenge one aspect of the regulation. ................................................................... 23

            3.     Plaintiffs have not established any sovereign injury. ..................... 26

            4.     The challenged portion of the rule does not proscribe plaintiffs' messaging. .......................................................... 31

     B.     Plaintiffs have not established the traceability or redressability of their purported injuries. ................................................................. 33

C.      Because plaintiffs lack standing, dismissal was proper. ............................ 38

II.     Plaintiffs are not entitled to extraordinary injunctive relief. ................................ 39

    A.      If this Court does not affirm the judgment, remand is appropriate. ...... 39

    B.      Injunctive relief is not warranted. ............................................................... 40

        1.      Plaintiffs have not shown a likelihood of success on the
                merits. ........................................................................................... 41

        2.      Plaintiffs have not shown that they will suffer irreparable
                harm or that the balance of equities weighs in their favor. .......... 47

CONCLUSION ........................................................................................................... 50

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Alden v. Maine,*
  527 U.S. 706 (1999) ........................................................................ 46

*Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez,*
  458 U.S. 592 (1982) .................................................................... 27, 31

*Axon Enter., Inc. v. Federal Trade Comm'n,*
  598 U.S. 175 (2023) ........................................................................ 39

*Barber v. Bryant,*
  860 F.3d 345 (5th Cir. 2017) ......................................................... 14

*Bonacci v. Transportation Sec. Admin.,*
  909 F.3d 1155 (D.C. Cir. 2018) ..................................................... 21

*Bucklew v. Lombardi,*
  783 F.3d 1120 (8th Cir. 2015) ....................................................... 38

*Carson v. Simon,*
  978 F.3d 1051 (8th Cir. 2020) ....................................................... 40

*Chandler v. Roudebush,*
  425 U.S. 840 (1976) ......................................................................... 4

*City of Clarkson Valley v. Mineta,*
  495 F.3d 567 (8th Cir. 2007) ...................................................... 22, 25

*Clapper v. Amnesty Int'l USA,*
  568 U.S. 398 (2013) ............................................................ 1, 17, 30

*Consumers' Research v. Consumer Prod. Safety Comm'n,*
  91 F.4th 342 (5th Cir. 2024) .......................................................... 18

*Corbett v. Transportation Sec. Admin.,*
  19 F.4th 478 (D.C. Cir. 2021) ........................................................ 21

*Cornish v. Blakey*,
336 F.3d 749 (8th Cir. 2003) ...................................................................... 17

*Dalton v. NPC Int'l, Inc.*,
932 F.3d 693 (8th Cir. 2019) ...................................................................... 38

*DeJesus v. Florida Cent. Credit Union*,
No. 8:17-cv-2502, 2018 WL 4931817 (M.D. Fla. Oct. 11, 2018) ............. 43

*Demarais v. Gurstel Chargo, P.A.*,
869 F.3d 685 (8th Cir. 2017) ...................................................................... 26

*Digital Recognition Network, Inc. v. Hutchinson*,
803 F.3d 952 (8th Cir. 2015) .......................................................... 1, 33, 35

*Dobbs v. Jackson Women's Health Org.*,
597 U.S. 215 (2022) ...................................................................................... 43

*Doe v. C.A.R.S. Prot. Plus, Inc.*,
527 F.3d 358 (3d Cir. 2008) ........................................................................ 43

*Ducharme v. Crescent City Déjà Vu, L.L.C.*,
406 F. Supp. 3d 548 (E.D. La. 2019) .......................................................... 43

*FDA v. Brown & Williamson Tobacco Corp.*,
529 U.S. 120 (2000) ...................................................................................... 47

*Fitzpatrick v. Bitzer*,
427 U.S. 445 (1976) ...................................................................................... 46

*Food & Drug Admin. v. Alliance for Hippocratic Med.*,
602 U.S. 367 (2024) ............................................................................ 15, 34

*Fouche v. Jekyll Island-State Park Auth.*,
713 F.2d 1518 (11th Cir. 1983) .................................................................. 37

*General Elec. Co. v. Gilbert*,
429 U.S. 125 (1976) ...................................................................................... 42

*George v. McDonough*,
596 U.S. 740 (2022) ...................................................................................... 44

*Gill v. Whitford,*
585 U.S. 48 (2018) ................................................................. 49

*Gray v. City of Valley Park,*
567 F.3d 976 (8th Cir. 2009) .................................................. 32

*Haaland v. Brackeen,*
599 U.S. 255 (2023) ...................................... 28, 30, 31, 35, 35-36

*Hart v. United States,*
630 F.3d 1085 (8th Cir. 2011) ................................................ 38

*Hiller v. Oklahoma ex rel. Used Motor Vehicle & Parts Comm'n,*
327 F.3d 1247 (10th Cir. 2003) .............................................. 37

*Iowa League of Cities v. Environmental Prot. Agency,*
711 F.3d 844 (8th Cir. 2013) ..............................................19, 20, 22

*Kentucky v. Biden,*
23 F.4th 585 (6th Cir. 2022) ................................................. 29

*Lankford v. Sherman,*
451 F.3d 496 (8th Cir. 2006) ................................................. 40

*League of Women Voters of the U.S. v. Newby,*
838 F.3d 1 (D.C. Cir. 2016) .................................................. 48

*Lujan v. Defenders of Wildlife,*
504 U.S. 555 (1992) ........................................................13, 22

*Meland v. Weber,*
2 F.4th 838 (9th Cir. 2021) .................................................. 21

*Minnesota Citizens Concerned for Life v. Federal Election Comm'n,*
113 F.3d 129 (8th Cir. 1997) ................................................. 37

*Missouri v. Biden,*
52 F.4th 362 (8th Cir. 2022) ................................................. 28

*Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives,*
78 F.4th 1011 (8th Cir. 2023) ..............................................1, 23-24, 24, 25

*MPAY Inc. v. Erie Custom Comput. Applications, Inc.*,
    970 F.3d 1010 (8th Cir. 2020) ..................................................... 40

*Murthy v. Missouri*,
    144 S. Ct. 1972 (2024) ............................................ 28, 29, 30, 31

*National Conference of Catholic Bishops v. Bell*,
    490 F. Supp. 734 (D.D.C. 1980), *aff'd per curiam sub nom.*
    *National Conference of Catholic Bishops v. Smith*, 653 F.2d 535 (D.C. Cir. 1981) ........... 43

*Nebraska v. Biden*,
    52 F.4th 1044 (8th Cir. 2022) ..................................................... 41

*Nevada Dep't of Human Res. v. Hibbs*,
    538 U.S. 721 (2003) ..................................................... 46

*Nken v. Holder*,
    556 U.S. 418 (2009) ..................................................... 48

*NLRB v. SW Gen., Inc.*,
    580 U.S. 288 (2017) ..................................................... 46

*Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*,
    656 F.3d 580 (7th Cir. 2011) ..................................................... 21

*Packard Elevator v. Interstate Commerce Comm'n*,
    782 F.2d 112 (8th Cir. 1986) ..................................................... 24

*School of the Ozarks, Inc. v. Biden*,
    41 F.4th 992 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 2638 (2023) ............... 1, 17, 34, 35

*Seila Law LLC v. Consumer Fin. Prot. Bureau*,
    591 U.S. 197 (2020) ..................................................... 39

*Sessler v. City of Davenport*,
    990 F.3d 1150 (8th Cir. 2021) ..................................................... 48

*Smith v. Boyd*,
    945 F.2d 1041 (8th Cir. 1991) ..................................................... 38

*Smith v. City of Jackson,*
    544 U.S. 228 (2005) ................................................................ 44

*Stalley ex rel. United States v. Catholic Health Initiatives,*
    509 F.3d 517 (8th Cir. 2007) .................................................. 25

*State Nat'l Bank of Big Spring v. Lew,*
    795 F.3d 48 (D.C. Cir. 2015) ............................................21, 39

*Stilwell v. Office of Thrift Supervision,*
    569 F.3d 514 (D.C. Cir. 2009) ............................................... 21

*SuperValu, Inc., In re,*
    870 F.3d 763 (8th Cir. 2017) .................................................. 24

*Susan B. Anthony List v. Driehaus,*
    573 U.S. 149 (2014) ................................................................ 32

*Taggart v. Lorenzen,*
    587 U.S. 554 (2019) ................................................................ 44

*Tennessee v. Department of Educ.,*
    104 F.4th 577 (6th Cir. 2024) ................................................ 27

*Texas v. EEOC,*
    933 F.3d 433 (5th Cir. 2019) ........................................21, 29, 34

*Turic v. Holland Hosp., Inc.,*
    85 F.3d 1211 (6th Cir. 1996) .................................................. 43

*281 Care Comm. v. Arneson,*
    638 F.3d 621 (8th Cir. 2011) ............................................37, 38

*Union Pac. R.R. Emp't Practices Litig., In re,*
    479 F.3d 936 (8th Cir. 2007) .................................................. 43

*United States v. Texas,*
    599 U.S. 670 (2023) ................................................................ 28

*Utility Air Regulatory Grp. v. EPA,*
    572 U.S. 302 (2014) ................................................................ 47

*Wallace v. ConAgra Foods, Inc.,*
747 F.3d 1025 (8th Cir. 2014) ......................................................... 26

*Washington v. U.S. Food & Drug Admin.,*
108 F.4th 1163 (9th Cir. 2024) ...................................................... 30, 31

*West v. Gibson,*
527 U.S. 212 (1999) ......................................................................... 49

*West Virginia v. EPA,*
597 U.S. 697 (2022) .................................................................... 20, 47

*Winter v. Natural Res. Def. Council, Inc.,*
555 U.S. 7 (2008) ..................................................................... 14, 41, 48

*Young v. United Parcel Serv., Inc.,*
575 U.S. 206 (2015) ........................................................................ 15

*Zanders v. Swanson,*
573 F.3d 591 (8th Cir. 2009) ........................................................... 13

**Statutes:**

Civil Rights Act of 1964,
42 U.S.C. § 2000e(k) ...................................................................... 2, 42
42 U.S.C. § 2000e-2(a)(1) .................................................................... 2
42 U.S.C. § 2000e-5 ........................................................................... 16
42 U.S.C. § 2000e-5(b) .................................................... 3, 4, 16, 34, 35
42 U.S.C. § 2000e-5(f)(1) ................................. 3, 4, 5, 8, 16, 34, 35, 36
42 U.S.C. § 2000e-6 ........................................................................... 36
42 U.S.C. § 2000e-6(a) ............................................................. 4, 35, 36
42 U.S.C. § 2000e-8(c) ...................................................................... 26

Pregnant Workers Fairness Act,
42 U.S.C. § 2000gg(4) ................................................................ 2, 44, 45
42 U.S.C. § 2000gg-1(1) ............................................................. 2, 3, 15
42 U.S.C. § 2000gg-2(a) ...................................................................... 3
42 U.S.C. § 2000gg-2(a)(1) ....................................... 5, 8, 34, 35, 36
42 U.S.C. § 2000gg-2(f)(2) ................................................................ 32
42 U.S.C. § 2000gg-3(a) ...................................................................... 2

42 U.S.C. § 2000gg-4 ........................................................ 46

28 U.S.C. § 1291 .............................................................. 1

28 U.S.C. § 1331 .............................................................. 1

28 U.S.C. § 1346 .............................................................. 1

28 U.S.C. § 2201 .............................................................. 1

**Regulations:**

29 C.F.R. § 1601.24(b) ..................................................... 35

29 C.F.R. § 1601.28(d)(1) ................................................. 4

29 C.F.R. § 1601.28(d)(2) .............................................. 5, 36

29 C.F.R. § 1601.29 ......................................................... 16

29 C.F.R. pt. 1604, app., Questions 34 & 35 (1979) .......... 43

29 C.F.R. pt. 1636 ........................................................ 1, 5

29 C.F.R. § 1636.3(j) .................................................. 15, 16

29 C.F.R. § 1636.5(f)(1) ................................................... 32

29 C.F.R. § 1636.5(f)(2) ................................................... 32

29 C.F.R. app. A ............................................................. 5

**Legislative Materials:**

H.R. Rep. No. 95-948 (1978) ....................................... 3, 42

H.R. Rep. No. 117-27, pt. 1 (2021) .................................. 45

**Other Authorities:**

Exec. Order No. 12,068,
   43 Fed. Reg. 28,971 (June 30, 1978) ................................................................ 4

*Implementation of the Pregnant Workers Fairness Act* ,
89 Fed. Reg. 29,096 (Apr. 19, 2024) .......................... 1, 5, 6, 25, 27, 28, 32, 33, 42, 44, 46

Reorganization Plan No. 1 of 1978,
   43 Fed. Reg. 19,807 (May 9, 1978) ................................................................ 4

## STATEMENT OF JURISDICTION

Plaintiffs invoked the district court's jurisdiction under 28 U.S.C. §§ 1331, 1346, and 2201(a). App. 21; R. Doc. 1, at 15, ¶¶ 37-39. The district court dismissed the complaint for lack of subject-matter jurisdiction. App. 375-403; R. Doc. 63, at 1-29; App. 404; R. Doc. 64. Plaintiffs filed a timely notice of appeal. App. 405; R. Doc. 65. This Court has jurisdiction pursuant to 28 U.S.C. § 1291.

## STATEMENT OF THE ISSUE

In April 2024, the Equal Employment Opportunity Commission (EEOC) finalized a rule implementing the Pregnant Workers Fairness Act (PWFA), which requires employers to provide reasonable accommodations for known limitations related to pregnancy, childbirth, and related medical conditions. *See* 89 Fed. Reg. 29,096 (Apr. 19, 2024); 29 C.F.R. pt. 1636. In this suit, 17 states challenge the rule to the extent it requires employers to provide accommodations for employees who seek abortions in specific circumstances. The issue presented is whether the district court correctly concluded plaintiffs lack Article III standing. The authorities most relevant to this Court's review of this issue are *Clapper v. Amnesty International USA*, 568 U.S. 398 (2013); *School of the Ozarks, Inc. v. Biden*, 41 F.4th 992 (8th Cir. 2022), *cert. denied*, 143 S. Ct. 2638 (2023); *Morehouse Enterprises, LLC v. Bureau of Alcohol, Tobacco, Firearms, & Explosives*, 78 F.4th 1011 (8th Cir. 2023); and *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952 (8th Cir. 2015).

**STATEMENT OF THE CASE**

### A. Statutory Background

#### 1. The Pregnant Workers Fairness Act

Enacted in 2022, the Pregnant Workers Fairness Act (PWFA) requires covered employers to "make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee." 42 U.S.C. § 2000gg-1(1). "The term 'known limitation' means physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions … ." *Id.* § 2000gg(4). The PWFA took effect June 27, 2023. Congress directed the Equal Employment Opportunity Commission (EEOC) to issue regulations to "carry out" the PWFA. *See id.* § 2000gg-3(a).

Congress imported the phrase "pregnancy, childbirth, or related medical conditions" into the PWFA from Title VII of the Civil Rights Act of 1964. Title VII makes it unlawful for employers "to discriminate against any individual … because of such individual's … sex." 42 U.S.C. § 2000e-2(a)(1). In 1978, Congress enacted the Pregnancy Discrimination Act, which amended Title VII to provide that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions; and women affected by pregnancy, childbirth, or related medical conditions shall be treated the same for all employment-related purposes." *Id.* § 2000e(k). In the same subsection, Congress expressly provided that "[t]his subsection shall not require an employer to

pay for health insurance benefits for abortion," except in certain circumstances, *id.*, reflecting Congress's understanding that the phrase "on the basis of pregnancy, childbirth, or related medical conditions" includes employees' decisions to have abortions. The legislative history explained that "on the basis of pregnancy, childbirth, or related medical conditions" is "language [that] covers decisions by women who chose to terminate their pregnancies." H.R. Rep. No. 95-948, at 4, 7 (1978).

As relevant here, the PWFA incorporates the enforcement and remedial procedures set forth in Title VII. *See* 42 U.S.C. § 2000gg-2(a). Under both Title VII and the PWFA, the Commission plays a more limited role in implementing the statute with respect to states than it does with respect to private employers. Although the Commission investigates charges of discrimination filed against state employers and may engage in conciliation efforts, the Commission cannot bring an enforcement action against a state employer. *See id.* § 2000e-5(f)(1). Instead, the Department of Justice (DOJ) enforces Title VII against state government employers. *Id.*

A state employee who believes her rights under the PWFA have been violated may file a charge of discrimination with the Commission, which investigates the charge to determine whether reasonable cause exists to believe a violation occurred. *See* 42 U.S.C. § 2000e-5(b). The Commission must assess any defenses the employer raises, including defenses asserting that any requested accommodation would impose an undue hardship on the employer. *See id.* § 2000gg-1(1).

If the Commission is unable to determine that reasonable cause exists, the Commission will dismiss the charge and notify the state employee that she may file suit in district court within 90 days.  42 U.S.C. § 2000e-5(b), (f)(1).  If the Commission concludes reasonable cause exists, the Commission must attempt to conciliate the charge.  *Id.* § 2000e-5(b).  But if conciliation efforts fail, the Commission cannot bring an enforcement action against the state.  *Id.* § 2000e-5(f)(1).  Rather, the Commission "shall take no further action" after the conclusion of conciliation efforts and shall refer the case to DOJ.  *See id.*

If a charge is referred to DOJ, DOJ independently assesses the charge and decides whether to pursue an enforcement action against the employer.  If DOJ decides not to pursue an enforcement action, DOJ issues the employee a letter notifying her of her right to sue the state in district court.  *Id.*; 29 C.F.R. § 1601.28(d)(1).  Regardless of whether DOJ or a state employee brings suit, the civil action would be a de novo determination of the state's liability, if any, under the PWFA.  *See Chandler v. Roudebush*, 425 U.S. 840, 844-45 (1976).  DOJ may also independently bring an enforcement action against a state employer, even in the absence of any charge of discrimination or any involvement of the Commission, if it has reasonable cause to believe that the employer is engaged in a pattern or practice of violating the statute.  *See* 42 U.S.C. § 2000e-6(a); *see also* Reorganization Plan No. 1 of 1978, 43 Fed. Reg. 19,807, 19,808 (May 9, 1978); Exec. Order No. 12,068, 43 Fed. Reg. 28,971 (June 30, 1978).

A state employee can also request a right-to-sue notice. When this occurs, DOJ (not the Commission) is the entity responsible for issuing the right to sue notice to the state employee; this can occur without a referral of the charge from the Commission to DOJ. *See* 42 U.S.C. § 2000e-5(f)(1); *id.* § 2000gg-2(a)(1); 29 C.F.R. § 1601.28(d)(2).

## 2. The Commission's Rule

Pursuant to Congress's directive, the Commission proposed and finalized a rule that took effect June 18, 2024. *See* 89 Fed. Reg. 29,096; 29 C.F.R. pt. 1636 & app. A. As relevant here, the rule explains that under the PWFA, the requirement to provide reasonable accommodations for the known limitations of pregnancy, childbirth, or related medical conditions applies to requests for accommodations to seek abortion care. *Id.* at 29,104. The rule explains that because Title VII's text has provided for over four decades that Title VII protects employees who choose to have (or not have) an abortion—and because Congress enacted the PWFA with identical language as Title VII, for the express purpose of expanding Title VII's protections—the PWFA also protects employees' choices about whether to have an abortion. *Id.* at 29,104-05.

The rule explains that the PWFA does not govern in any way whether an employee may seek or obtain an abortion, does not require taxpayers to pay for any abortions, and does not require health care providers to provide abortions. 89 Fed. Reg. at 29,104. The rule further explains that the PWFA does not require an employer to pay for an employee's abortion or travel-related expenses; nor does it

5

require that any leave that is provided as an accommodation be paid leave, unless the employer's policies provide otherwise. *Id.* And the rule confirms that accommodations related to abortion, like all accommodations under the rule, are subject to applicable exceptions and defenses, including those based on religion and undue hardship. *Id.* at 29,105, 29,146-55. The Commission will evaluate those defenses on a case-by-case basis. *See id.* at 29,113, 29,146-55.

### B. Prior Proceedings

The States of Tennessee, Arkansas, Alabama, Florida, Georgia, Idaho, Indiana, Iowa, Kansas, Missouri, Nebraska, North Dakota, Oklahoma, South Carolina, South Dakota, Utah, and West Virginia filed a challenge to the rule in U.S. District Court for the Eastern District of Arkansas on April 25, 2024. In this suit, plaintiffs contend that the rule is unlawful to the extent it requires covered employers to provide workplace accommodations for employees seeking abortion care in certain circumstances. Plaintiffs agree that the PWFA entitles employees to accommodations if an employee is seeking an abortion as treatment for a medical condition. App. 379; R. Doc. 63, at 5. But plaintiffs contend that employers may not be required to provide abortion-related accommodations in what they view as other circumstances. *See* App. 311-13; R. Doc. 62, at 23-25; App. 379; R. Doc. 63, at 5. Plaintiffs do not challenge the PWFA or most of the PWFA rule; instead, "[t]hey recognize almost all of EEOC's final rule as salutary." App. 378; R. Doc. 63, at 4.

Plaintiffs moved for a preliminary injunction and stay of the rule's effective date, *see* App. 220-33; R. Doc. 17, which the district court denied, *see* App. 375-403; R. Doc. 63. The district court held that plaintiffs had failed to show Article III standing to press their claims. *See* App. 402; R. Doc. 63, at 28.

First, the court determined that plaintiffs had failed to establish injury-in-fact, because they had not shown a concrete, particularized, and actual or imminent injury from the aspect of the regulation that they challenge. App. 381, 385; R. Doc. 63, at 7, 11. The court explained that plaintiffs had not shown that any of their purported "sovereign harms" were imminent because the threat of any injury was too speculative. *See* App. 381; R. Doc. 63, at 7. The district court further concluded that plaintiffs faced no credible threat of enforcement because any enforcement action was contingent on a "many-step series of events" that is not "certainly impending" and described each step in the attenuated sequence of events on which plaintiffs' theory of harm is premised. App. 382-83; R. Doc. 63, at 8-9 (citation omitted). The court observed that plaintiffs' legal challenge is premised on their hypothesis that they will face accommodation requests from employees seeking "time off" for abortions that "[i]n the plaintiff states … are illegal," and that it is "particularly unlikely" an employee will ask their state employer for an accommodation for abortion care in these circumstances. App. 383; R. Doc. 63, at 9. For all these reasons, the court concluded, "the States haven't shown that the Commission's rule is likely to cause their alleged harms." App. 381; R. Doc. 63, at 7.

The district court also held that plaintiffs had not established injury-in-fact on the basis of their purported economic harms. App. 387-89; R. Doc. 63, at 13-15. Specifically, the court explained that plaintiffs had failed to "offer[] particulars about how" the challenged portion of the regulation "imposes additional compliance costs beyond those required by the unchallenged parts of the regulation, or even the [PWFA] itself." App. 388; R. Doc. 63, at 14. After concluding that plaintiffs had not established actual or imminent injury, the district court rejected plaintiffs' assertions that they have standing because they are the "object" of agency action. App. 389; R. Doc. 63, at 15. The district court noted that plaintiffs "press no procedural challenge here." *Id.*

Second, while plaintiffs' failure to show injury-in-fact was sufficient to deprive them of Article III standing to sue, the district court also held that plaintiffs had failed to show that their purported injuries were either traceable to the Commission, the sole named defendant, or redressable by the relief that plaintiffs seek. *See* App. 383; R. Doc. 63, at 9. The court based its holding on the fact that the Commission is not authorized to bring an enforcement action against state employers under the PWFA or its implementing regulations. *Id.* The PWFA's enforcement procedures, which are modeled after Title VII, provide that DOJ is the only government entity that may enforce the statute against state and local governments. 42 U.S.C. §§ 2000e-5(f)(1), 2000gg-2(a)(1).

Moreover, the district court explained, enjoining or staying the rule would not provide the relief plaintiffs seek, because the "unchallenged [PWFA]—not the final rule—is what requires State employers to accommodate 'known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee.'" App. 384; R. Doc. 63, at 10. This means that an injunction prohibiting the Commission from investigating charges against a state employer would not preclude an employee from enforcing the statute's protections by filing a charge with the Commission under the statute directly. *See* App. 386-87; R. Doc. 63, at 12-13. And the employee would remain free to seek relief for the denial of an accommodation to which she is statutorily entitled in federal court. *See id.* The district court also concluded plaintiffs had not shown irreparable harm for largely the same reasons that it found plaintiffs lacked standing. App. 390-94; R. Doc. 63, at 16-20.

Because plaintiffs failed to establish standing, the court dismissed the complaint without prejudice for lack of subject-matter jurisdiction and denied plaintiffs' preliminary-injunction motion as moot. *See* App. 402; R. Doc. 63, at 28.

## SUMMARY OF ARGUMENT

**I.** The district court correctly dismissed this suit for lack of standing. Plaintiffs argue that the regulation is unlawful to the extent it requires them to provide reasonable accommodations to employees seeking abortions in certain circumstances, but plaintiffs have not shown that an employee has or is imminently likely to request such an accommodation. Nor have plaintiffs shown that they would be injured by

such accommodation requests if they were actual or imminent. Under the PWFA, an employer may deny an accommodation request if it is unreasonable or would impose an undue hardship.

Plaintiffs also have not established a credible threat of enforcement for denying a challenged abortion-related accommodation request, given the hypothetical and extended sequence of events that would need to occur before any enforcement action could even be a possibility. Specifically, in addition to the need for an employee to request an accommodation related to an abortion to which plaintiffs object in the first instance, an employee would need to decide to file a charge with the Commission, the Commission would need to investigate and find reason to believe a violation occurred, the Commission's conciliation efforts would have to be unsuccessful, the Commission would need to refer the charge to DOJ, DOJ would need to find reason to believe a violation occurred, and DOJ would need to decide to initiate an enforcement action. Plaintiffs have failed to show that any of these contingencies— let alone each of these contingencies—has occurred or is imminently likely to occur.

Because the challenged aspect of the regulation does not compel any action by plaintiffs until a request for a challenged accommodation is made, and because plaintiffs have not shown that any such request is actual or imminent, they cannot establish injury-in-fact. Plaintiffs' complaint contains no procedural challenges to the rulemaking that would support standing, and plaintiffs' proffered procedural challenges in any event fail.

Nor can plaintiffs establish injury-in-fact by gesturing to compliance costs. Plaintiffs have not identified any costs specifically attributable to the challenged aspect of the regulation above and beyond the costs associated with complying with the PWFA or the unchallenged parts of the regulation. And the regulatory impact analysis in the final rule does not fill this gap in plaintiffs' showing.

Plaintiffs' assertions of sovereign injury are likewise insufficient to support their standing to sue. Plaintiffs have not shown any conflict between the aspect of the regulation that they challenge and any state-specific laws. The challenged aspect of the regulation does not address, let alone regulate, access to abortion. Nor does it conflict with any of the assorted sovereign interests that plaintiffs reference on appeal. Plaintiffs have also failed to identify any specific messaging they intend to engage in that the rule proscribes and therefore cannot establish standing on that basis.

Nor have plaintiffs shown that their purported injuries are traceable to the Commission or redressable by the relief requested in this action. Under the PWFA itself, the requirement to provide reasonable accommodations for known limitations related to pregnancy, childbirth, or related medical conditions applies to requests for accommodations to seek abortion care, so plaintiffs' requested relief from the rule would not relieve them of their statutory obligation. Moreover, even if plaintiffs were to obtain injunctive relief preventing the Commission from enforcing the challenged aspect of the rule, plaintiffs' requested relief would not relieve them of the prospect of enforcement, for only DOJ can bring enforcement actions on behalf of the federal

government against state and local governments. DOJ would remain free to enforce the PWFA as to state employers, and employees would remain free to seek relief in federal court.

Because plaintiffs have not shown standing with respect to any of their claims, the district court properly dismissed the complaint for lack of subject matter jurisdiction. The district court's conclusion that plaintiffs had failed to establish injury-in-fact on any of their theories also supports dismissal of their challenge to the Commission's structure.

**II.** If this Court concludes otherwise, remand would be appropriate to allow the district court to assess the preliminary-injunction factors in the first instance. Given the district court's conclusion that it lacked subject-matter jurisdiction, the district court did not determine the likelihood of plaintiffs' success on the merits, address the balance of equities, or consider the propriety of extraordinary relief.

If this Court nevertheless addresses these issues in the first instance, it should deny plaintiffs' request for preliminary injunctive relief. Plaintiffs are not likely to succeed on the merits, because under the PWFA, the requirement to provide reasonable accommodations for the known limitations of pregnancy, childbirth, or related medical conditions applies to requests for accommodations to seek abortion care. The statutory accommodation requirement imports the plain text of Title VII, which has provided for nearly half a century that that very language protects employees' decisions about whether to have an abortion. Congress enacted the

PWFA with identical language as Title VII, entitling employees to reasonable accommodations for the known limitations of "pregnancy, childbirth, and related medical conditions," absent undue hardship. Plaintiffs' attempt to recast the PWFA's statutory protections as excluding accommodations for abortions in certain circumstances lacks any textual basis and is unmoored from the settled meaning of the relevant language. And it is inconsistent with plaintiffs' recognition of the accommodations to which employees are entitled under the PWFA.

A preliminary injunction is also improper because plaintiffs have not shown that they will suffer any harm, much less irreparable harm, absent an injunction. The equities and public interest further weigh against plaintiffs' request for extraordinary relief.

## ARGUMENT

### STANDARD OF REVIEW

The Court reviews de novo a district court's dismissal for a lack of jurisdiction. *Zanders v. Swanson*, 573 F.3d 591, 593 (8th Cir. 2009).

## I. Plaintiffs have not established standing to sue.

The district court correctly concluded that plaintiffs lack Article III standing. As explained below, plaintiffs have not demonstrated a "concrete and particularized" injury that is "actual or imminent, not conjectural or hypothetical," that is fairly traceable to the challenged action, and that is likely to be redressed by the relief requested. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992) (quotations

omitted). Because a preliminary injunction "may only be awarded upon a clear showing that the plaintiff is entitled to such relief," plaintiffs must make a "clear showing" that they have standing to seek a preliminary injunction. *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 22 (2008); *accord Barber v. Bryant*, 860 F.3d 345, 352 (5th Cir. 2017).

## A. Plaintiffs have not shown injury-in-fact.

### 1. Plaintiffs have not established actual or imminent injury.

**a.** Plaintiffs have not demonstrated any actual or imminent injury from the specific aspect of the regulation that they challenge. As explained, plaintiffs argue that the rule is unlawful to the extent it requires them to provide reasonable accommodations for abortions in certain circumstances. Specifically, plaintiffs agree that the PWFA entitles employees to accommodations for abortions in many circumstances, and challenge the rule to the extent it requires employers to provide accommodations to employees seeking abortions not compelled by a medical diagnosis. *See* App. 311-13; R. Doc. 62, at 23-25; App. 379; R. Doc. 63, at 5. But plaintiffs have not shown that an employee has or is imminently likely to request such an accommodation. Plaintiffs' failure is all the more pronounced because the PWFA has been in effect for more than a year, and the rule has been in effect for more than two months. Nor have plaintiffs identified any Title VII charges involving requests for abortion-related accommodations, even though Title VII has permitted

accommodation claims for nearly 50 years. *See Young v. United Parcel Serv., Inc.*, 575 U.S. 206 (2015).

Were such accommodation requests to materialize, plaintiffs have not shown they would imminently be injured by them. Under the PWFA, an employer may deny an accommodation request if it is unreasonable or would impose an undue hardship. *See* 42 U.S.C. § 2000gg-1(1); 29 C.F.R. § 1636.3(j). To demonstrate injury from an accommodation request, then, plaintiffs must show that those circumstances are not present. Plaintiffs have made no such showing. As the district court explained, "the States don't claim any actual harm yet," and "the States haven't shown that the Commission's rule is likely to cause their alleged harms" either. App. 381; R. Doc. 63, at 7 (citing *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 382 (2024)).

**b.** Plaintiffs have also suggested that if they do not comply with the PWFA's requirement to provide workplace accommodations, they face a credible threat of enforcement and consequent harm. This argument fails because plaintiffs have not established a credible threat of enforcement, given that an extended and hypothetical series of events would need to occur before any risk of enforcement would materialize.

*First*, an employee must seek the specific type of abortion care that plaintiffs believe they cannot be required to accommodate.

15

*Second*, the employee must need an accommodation and choose to request the accommodation under the PWFA, instead of using other available benefits, such as sick leave or annual leave.

*Third*, the employer must deny the employee's request for an accommodation.

*Fourth*, the employee must timely file a charge with the Commission challenging the employer's denial of her accommodation request. *See* 42 U.S.C. § 2000e-5.

*Fifth*, the Commission must investigate the charge, reject any defenses raised by the employer, and decide there is reasonable cause to believe that a violation has occurred or is occurring. Before the Commission decides there is reasonable cause, it must determine whether the employee has satisfied all elements of a PWFA claim, and it must assess any defenses raised by the employer under the PWFA, such as undue hardship. *See* 29 C.F.R. § 1636.3(j).

*Sixth*, if the Commission decides there is reasonable cause to believe that a violation occurred, the Commission must try to secure a conciliation agreement. *See* 42 U.S.C. § 2000e-5(b).

*Seventh*, if conciliation fails, the Commission must refer the charge to the Department of Justice (DOJ). Only DOJ is authorized to bring a PWFA enforcement action against a state employer. *See* 42 U.S.C. § 2000e-5(f)(1); 29 C.F.R. § 1601.29.

*Eighth*, if the Commission refers the charge to DOJ, DOJ must independently review the charge and decide to bring an enforcement action against the employer. *See* 42 U.S.C. § 2000e-5(f)(1).

Plaintiffs have not established that even one of these steps is "certainly impending," let alone that the entire sequence is. *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 416 (2013); *see* App. 382; R. Doc. 63, at 8. In fact, plaintiffs have not identified a single enforcement action involving the denial of a challenged abortion accommodation under the PWFA or Title VII. When a plaintiff's allegations of injury are premised on a hypothetical enforcement action that would only occur following a "highly attenuated chain of possibilities," the allegations "do[] not satisfy the requirement that threatened injury must be certainly impending." *School of the Ozarks, Inc. v. Biden*, 41 F.4th 992, 1000 (8th Cir. 2022) (quoting *Clapper*, 568 U.S. at 410), *cert. denied*, 143 S. Ct. 2638 (2023).

For instance, in *School of the Ozarks, Inc. v. Biden*, this Court held that the plaintiff's alleged injury was "too speculative to establish Article III standing" when the plaintiff asked the Court to assume that a complaint would be filed against the plaintiff based on an agency directive, that the agency would investigate the complaint, that the agency would decide to charge the plaintiff under the statute, that the agency would deny the plaintiff any exemptions, and that the agency would subject the plaintiff to penalties. *See* 41 F.4th at 1000; *see also Cornish v. Blakey*, 336 F.3d 749, 752-53 (8th Cir. 2003) (holding that the plaintiff "was not even arguably injured" from a challenged agency memorandum until the agency had actually relied on the memorandum in taking an action against the plaintiff). Plaintiffs ask this Court to assume that an even more attenuated and speculative chain of events will occur

17

before they experience any harm from a hypothetical enforcement action. For standing purposes, that is "too speculative" to establish injury-in-fact. App. 382; R. Doc. 63, at 8.

The district court correctly reached this conclusion in determining that plaintiffs had failed to show injury-in-fact. *See* App. 381; R. Doc. 63, at 7. As the district court explained, "imminent enforcement action is too speculative," because a "many-step series of events" must occur before the threat of enforcement materializes, and plaintiffs have not shown that any of these steps is likely to occur, let alone imminent. App. 383; R. Doc. 63, at 9. Moreover, the court observed that because plaintiffs' challenge is limited to accommodation requests from employees seeking abortions in certain circumstances, and "[i]n the plaintiff States," those abortions "are illegal," it seems "particularly unlikely" that an employee will ask for "time off" from a plaintiff state employer in these circumstances. App. 379, 383; R. Doc. 63, at 5, 9.

**c.** Plaintiffs cannot circumvent these deficiencies by asserting that they are "subject[]" to the regulation. Br. 24. "[E]very American is subject to a great many regulations[,] … [b]ut merely being subject to those regulations, in the abstract, does not create injury." *Consumers' Research v. Consumer Prod. Safety Comm'n*, 91 F.4th 342, 350 (5th Cir. 2024). The challenged part of the regulation does not oblige plaintiffs to take any action unless and until an employee requests an abortion accommodation in the specific circumstances that plaintiffs contest, and plaintiffs have not shown that

any such request is actual or imminent. If no one ever asks for such an accommodation, plaintiffs will never be injured from having to provide one, and they will never face a threat of enforcement for declining to do so.

This Court's decision in *Iowa League of Cities v. Environmental Protection Agency*, 711 F.3d 844 (8th Cir. 2013), on which plaintiffs rely (Br. 25), illustrates why plaintiffs lack standing here. In *Iowa League of Cities*, an association of municipalities sought review of letters sent by the Environmental Protection Agency (EPA). *See* 711 F.3d at 854. The municipalities urged that the letters impermissibly instituted new requirements for their water treatment systems. *See id.* In assessing standing, the Court concluded that the municipalities had established injury because their "affidavits evince[d] the type of 'concrete' and 'actual or imminent' harm necessary to establish injury in fact." *Id.* at 870. The Court noted that some municipalities were "currently operating under permits that allow[ed] them to utilize" certain water treatment systems "inconsistent with the EPA letters, which they must imminently rectify." *Id.* That is what established their injury-in-fact. *See id.*

In contrast, plaintiffs' affidavits here do not establish injury-in-fact because the PWFA does not require plaintiffs to take any action until an employee requests a challenged accommodation. *See also Iowa League of Cities*, 711 F.3d at 868 (explaining that the challenged letters required the municipalities to "immediately alter their behavior"); *infra* pp. 23-26 (explaining that the challenged portion of the rule does not impose any immediate compliance costs). Plaintiffs are not even in a position to run

afoul of the PWFA's accommodation requirement until and unless an employee requests an accommodation plaintiffs intend to refuse.

*Iowa League of Cities* does not hold that plaintiffs can establish constitutional injury-in-fact from a desire to "avoid[] regulatory obligations," as plaintiffs suggest (Br. 25) (quoting *Iowa League of Cities*, 711 F.3d at 871).  That language comes from a paragraph in the Court's opinion addressing the municipalities' "procedural challenge" that the agency had "dodged the APA's notice and comment procedures" and assessing injury-in-fact in those circumstances.  *Iowa League of Cities*, 711 F.3d at 870-71.  Plaintiffs here have not raised procedural challenges, *see infra* pp. 22-23, and cannot circumvent Article III's standing requirements by recasting their substantive challenges as procedural on appeal.  *See also Iowa League of Cities*, 711 F.3d at 870.  *Iowa League of Cities* likewise offers no support for plaintiffs' suggestion (Br. 25) that the mere assertion that an agency action exceeds statutory authority is sufficient to satisfy the injury-in-fact requirement.  *See* 711 F.3d at 870 (finding concrete injury).

The other cases plaintiffs cite (Br. 25-27) are also inapposite.  Each involved agency action that called for an immediate change to the plaintiffs' ongoing activities.  In *West Virginia v. EPA*, 597 U.S. 697 (2022), for example, the EPA's Clean Power Plan required states to "more stringently regulate power plant emissions within their borders."  *Id.* at 719.  By contrast, the PWFA does not require any action by plaintiffs until an independent third party (namely, one of plaintiffs' employees) decides to take a particular action (namely, request a challenged accommodation).  An abstract

assertion that one is the "object" of a regulation is insufficient absent a showing that the regulation inflicts a legally cognizable injury. Plaintiffs have not made such a showing.

Plaintiffs' assorted out-of-circuit cases (Br. 25-27) do not support their position either. *See Texas v. EEOC*, 933 F.3d 433, 448 (5th Cir. 2019) (state could challenge agency guidance that "declar[ed] presumptively unlawful the very hiring practices employed by state agencies" and "require[d] action immediately"); *State Nat'l Bank of Big Spring v. Lew*, 795 F.3d 48, 53 (D.C. Cir. 2015) (bank could challenge agency's structure because bank had to immediately incur costs to conform its practices to agency mandates); *Corbett v. Transportation Sec. Admin.*, 19 F.4th 478, 483-84 (D.C. Cir. 2021) (plaintiff could challenge an agency's mask mandate for travel because he was "forced to comply with the [agency's] directives" whenever he flew and at the time of the suit, "ha[d] future travel booked where he will again face compelled compliance … under the credible threat of enforcement"); *Bonacci v. Transportation Sec. Admin.*, 909 F.3d 1155, 1157, 1159-60 (D.C. Cir. 2018) (plaintiff could challenge a program to which he had "been made subject" after having been "selected" for the program already); *Meland v. Weber*, 2 F.4th 838, 846 (9th Cir. 2021) (government action required plaintiffs to change their "immediate behavior" (quoting *Owner-Operator Indep. Drivers Ass'n v. Federal Motor Carrier Safety Admin.*, 656 F.3d 580, 586 (7th Cir. 2011))); *Stilwell v. Office of Thrift Supervision*, 569 F.3d 514, 518-19 (D.C. Cir. 2009) (plaintiffs had asserted agency action "economically help[ed] regulated Party A and hinder[ed] Party B").

**d.** Plaintiffs also suggest that they have mounted procedural challenges to the rulemaking and that the usual standing requirements therefore do not apply (Br. 34-35). But plaintiffs' complaint does not raise any procedural challenges. A procedural challenge attacks the way in which the agency took action—whether it should have engaged in notice and comment, for example, or prepared an environmental impact statement under the National Environmental Policy Act (NEPA)—not the content of the agency's action or substance of the agency's reasoning. *See Iowa League of Cities*, 711 F.3d at 870 (notice-and-comment challenge); *id.* at 871 (similar); *City of Clarkson Valley v. Mineta*, 495 F.3d 567, 568 (8th Cir. 2007) (NEPA challenge); *accord Lujan*, 504 U.S. at 572 n.7.

Plaintiffs argue that three paragraphs of their complaint allege the Commission "fail[ed] to address their comments" during the rulemaking. Br. 35. But those paragraphs do not even reference plaintiffs' comments from the rulemaking process; nor do they assert that the Commission violated the Administrative Procedure Act's procedural requirements. Instead, those complaint paragraphs set forth plaintiffs' substantive grievances with the rule, *see* Br. 35—namely, that the rule does not adequately address plaintiffs' specific federalism concerns, religion and speech concerns, and costs, *see* App. 47-49; R. Doc. 1, at 41-43, ¶¶ 127-29. Plaintiffs offer no authorities to support their argument that these quintessential arbitrary-and-capricious challenges should be treated as procedural challenges. Plaintiffs' cases addressing standing to pursue procedural challenges, *see* Br. 25-26, are thus irrelevant, and the

district court correctly rejected this theory of standing, *see* App. 389; R. Doc. 63, at 15. Even if plaintiffs had raised a procedural challenge, they would lack standing because they have shown no concrete injury. In any event, the rule addressed each of the substantive issues. *See* 89 Fed. Reg. at 29,104-05, 29,108-09, 29,112-13, 29,220, 29,141-42, 29,144-55, 29,155-82.

2. **The hypothetical costs of complying with the statute do not establish plaintiffs' standing to challenge one aspect of the regulation.**

**a.** Plaintiffs also cannot establish standing on the basis of hypothetical compliance costs (Br. 28-29, 35-37). As the district court explained, plaintiffs "challenge only a sliver of the whole" regulation and have not "offered particulars about how the challenged slice imposes additional compliance costs beyond those required by the unchallenged parts of the regulation, or even the [PWFA] itself." App. 387-88; R. Doc. 63, at 13-14. Plaintiffs conceded in district court that they "don't know" if the portion of the regulation that they challenge imposes any additional compliance costs at all. App. 388; R. Doc. 63, at 14 (quoting App. 302; R. Doc. 62, at 14). Plaintiffs also acknowledged that "[t]here is no evidence … in the record" about whether any costs have already been incurred. App. 302; R. Doc. 62, at 14. Thus, plaintiffs have "not explain[ed] the economic harm" from the challenged portion of the regulation "in definite enough terms" to show any harm from the challenged aspect of the regulation is "'actual and not theoretical.'" *Morehouse Enters., LLC v. Bureau of Alcohol, Tobacco, Firearms & Explosives*, 78 F.4th 1011, 1018 (8th Cir.

2023) (quoting *Packard Elevator v. Interstate Commerce Comm'n*, 782 F.2d 112, 115 (8th Cir. 1986)).  Because "plaintiffs do not try to quantify, or clearly explain," the costs associated with the narrow portion of the rule that they challenge, they have not established standing to sue based on economic harm.  *Id.*

Additionally, because plaintiffs have not shown an actual or imminent likelihood of an employee requesting a challenged abortion accommodation, much less an accommodation that would require an expenditure of funds, the estimated costs of those accommodations would be purely speculative and inadequate to establish Article III injury.  *See In re SuperValu, Inc.*, 870 F.3d 763, 771 (8th Cir. 2017) (noting that "the time" plaintiffs "spent protecting themselves against [a] speculative threat cannot create an injury").

**b.**  The cost estimates in the rule also do not support plaintiffs' position (Br. 37).  Those estimates reflect the costs of the rule as a whole, which implements the statute as a whole; they do not indicate the costs imposed by the requirement at issue here, much less the particular applications to which plaintiffs object.  In any event, the regulatory impact analysis in the rule contains generalized estimates of the costs that employers may incur in implementing the PWFA, but those estimated costs are neither prescriptive nor specific to plaintiffs.  The economic analysis does not require employers to take or forgo any actions.  Many of the costs discussed in the regulatory impact analysis are associated with activities that employers may voluntarily undertake—for instance, to update guidance informing employees of their rights—

24

and are associated with implementing the PWFA's protections as a whole. The challenged aspect of the rule does not "force[]" employers to alter their written policies, handbooks, or guidance (Br. 34). *See* 89 Fed. Reg. 29,183-89.

Additionally, the rule recognizes that the costs of providing the accommodations, if requested, will vary by employer—for instance, based on the kinds of leave and benefits the employer already provides. *See, e.g.*, 89 Fed. Reg. at 29,174-75 & n.455, 29,177. The regulatory impact analysis emphasizes that nearly half of the reasonable accommodations required under the PWFA "will have no cost to covered entities," and that "many entities covered by the PWFA are already required to provide such accommodations under State and local laws." *Id.* at 29,164. If plaintiffs wish to assert standing based on the costs of providing specific challenged accommodations, they must identify what those costs are—which they do not do. It is not enough for plaintiffs to "general[ly] alleg[e]" economic harm, as they suggest. Br. 37 (alterations in original) (quoting *City of Clarkson Valley*, 495 F.3d at 569); *see Morehouse Enters.*, 78 F.4th at 1018 (explaining that "generally alleged compliance costs" are insufficient for standing). In any event, the alleged costs of providing the challenged accommodations would only be incurred if such an accommodation is requested, and plaintiffs have not plausibly alleged or shown a request is actual or imminent; thus, the purported economic harms are not actual or imminent either. *See Stalley ex rel. United States v. Catholic Health Initiatives*, 509 F.3d 517, 521 (8th Cir. 2007) ("The plaintiff must assert facts that affirmatively and plausibly suggest that the

pleader has the right he claims (here, the right to jurisdiction), rather than facts that are merely consistent with such a right.").

Plaintiffs' reliance (Br. 28) on *Demarais v. Gurstel Chargo, P.A.*, 869 F.3d 685 (8th Cir. 2017), is misplaced because plaintiffs have not shown any specific "loss" attributable to the narrow part of the regulation they challenge. *Id.* at 693. *Wallace v. ConAgra Foods, Inc.*, 747 F.3d 1025, 1029 (8th Cir. 2014), is likewise inapposite.

**c.** Plaintiffs also contend, for the first time on appeal, that their obligation to maintain "'records relevant to the determinations of whether unlawful employment practices have been or are being committed,'" will require them to "document any failure to adhere to the practices the Final Rule newly defines as unlawful, including failure to accommodate an employee abortion." Br. 29 (quoting 42 U.S.C. § 2000e-8(c)). But given plaintiffs' failure to show that a request for a challenged abortion accommodation is actual or imminent, plaintiffs cannot argue that documenting any failure to accommodate such a request is actual or imminent and therefore a basis for injury-in-fact. Nor have plaintiffs identified any costs of complying with the documentation requirement attributable to their intent to deny accommodations in the circumstances they challenge.

### 3. Plaintiffs have not established any sovereign injury.

**a.** Plaintiffs' assertions of sovereign injury (Br. 29-33) likewise do not establish plaintiffs' standing to sue. First, plaintiffs assert that the challenged aspect of the regulation threatens their sovereign interests by "interfering" with their regulation of

abortion.  Br. 31.  That is false.  The rule reaffirms that the PWFA "does *not* regulate the provision of abortion services or affect whether and under what circumstances an abortion should be permitted."  89 Fed. Reg. at 29,104 (emphasis added).  Thus, the district court correctly concluded that "[t]here is no present or potential conflict between the States' abortion restrictions and the EEOC's rule."  App. 392 & n.2; R. Doc. 63, at 18 & n.2 (citing specific state laws for each plaintiff state).  As the district court explained, the "substantive abortion laws cited by the States only regulate abortion providers," and the rule does not regulate abortion providers in their capacities as abortion providers.  App. 392; R. Doc. 63, at 18.  Plaintiffs have not shown a specific conflict between their regulation of abortion and the rule.  *See Alfred L. Snapp & Son, Inc. v. Puerto Rico ex rel. Barez*, 458 U.S. 592, 601 (1982) (explaining that a state's sovereign interest is in its sovereign authority to "create and enforce a legal code" within its jurisdiction); *Tennessee v. Department of Educ.*, 104 F.4th 577, 593 & n.15, 594 & n.16 (6th Cir. 2024) (noting that states that had not identified a specific "state policy that conflicted with the [agency action] at the time the States filed their complaint" did not have standing under the "sovereign-interest theory").

Nor have plaintiffs argued or shown on appeal that there is any conflict between the rule and any state laws prohibiting employers from providing financial support to employees seeking abortions.  Plaintiffs have not identified any such laws on the books, but in any event, the rule explains that "[n]othing in the PWFA requires an employer to pay for an abortion," 89 Fed. Reg. at 29,109, or "require[s] an

employer-sponsored health plan to pay for or cover … abortion," *id.* at 29,104. Nor is an employer required "to pay any travel-related expenses for an employee to obtain an abortion." *Id.* And the PWFA "does not require that leave as an accommodation be paid leave, so leave will be unpaid unless the employer's policies provide otherwise." *Id.*

Contrary to plaintiffs' assertions, the rule does not provide that employers must "change their current human resources policies." Br. 31. Plaintiffs do not cite a single "human resource[] polic[y]" from a plaintiff state employer that "express[es] certain [pro-life] values" by expressly prohibiting abortion-related accommodations, or a specific policy that is purportedly "declare[d] … 'unlawful'" by the rule. Br. 31 (fourth alteration in original). The rule leaves employers free to craft their policies as they see fit. Plaintiffs' assertion in their brief (Br. 7) that they do not "offer[] … leave for elective abortions" is not sufficient to establish a conflict with the rule, let alone a sovereign injury.

The Supreme Court has emphasized that states cannot invoke "startlingly broad" sovereign interests that would create "boundless theor[ies] of standing." *Murthy v. Missouri*, 144 S. Ct. 1972, 1985-86, 1996 (2024) (quotations omitted); *see also Haaland v. Brackeen*, 599 U.S. 255, 295 (2023); *cf. United States v. Texas*, 599 U.S. 670, 675-76, 680 n.3 (2023); *accord Missouri v. Biden*, 52 F.4th 362, 369 (8th Cir. 2022). Yet that is what plaintiffs seek to do here. The Supreme Court has also made clear that sovereign injuries must be shown with specificity. *See Murthy*, 144 S. Ct. at 1996

(rejecting a purported injury to states' "sovereign interest in hearing from their citizens on social media" because "[t]he States ha[d] not identified any specific speakers or topics that they have been unable to hear or follow"). But, as explained above, plaintiffs have not shown any specific conflicts that cause them injury.

This case is unlike *Texas v. EEOC*, 933 F.3d 433, where the court found that the challenged agency guidance "warn[ed] the state" that it could show it was acting lawfully only if it "abandon[ed its] policies and adopt[ed] one of two procedures authorized by the [g]uidance." *Id.* at 447. In that case, the state agencies had formal policies excluding individuals with certain felony convictions from employment, *see id.* at 439, and the court concluded that the agency guidance conflicted with those policies by declaring certain bars on hiring people with felony convictions to be unlawful, *see id.* at 447. By contrast, plaintiffs here identify no specific state policy barring reasonable accommodations for employees who seek to obtain abortion care in the specific circumstances that plaintiffs challenge, so the challenged aspect of the regulation does not in fact "declare[] the States' current contrary policies 'unlawful.'" Br. 31; *cf. Kentucky v. Biden*, 23 F.4th 585, 599 (6th Cir. 2022) (noting state plaintiffs had "shown that each of the states follows its own, contrary vaccination policy" to "show[] standing in the states' sovereign and quasi-sovereign capacities").

**b.** Plaintiffs also have not established standing to sue based on the assortment of other allegedly sovereign interests they assert for the first time on appeal. Plaintiffs' generalized "interests in protecting the health and well-being of their

citizens," Br. 30, are not contravened by the challenged rule, since the PWFA rule does not regulate, require, or prohibit any health treatment. The rule addresses workplace accommodations. And in any event, any purported injury to the state's sovereign interest in regulating public health is necessarily premised on the possibility of an employee seeking a challenged accommodation, which, as explained, is too speculative a possibility to support standing. *See Clapper*, 568 U.S. at 414. Finally, to the extent plaintiffs seek to assert an interest in the generalized "well-being of individual citizens," that is "not a distinct interest of the state as a whole," *Washington v. U.S. Food & Drug Admin.*, 108 F.4th 1163, 1178 (9th Cir. 2024), and a state "does not have standing to bring a lawsuit 'on behalf of its citizens' against a federal agency," *id.* (quoting *Brackeen*, 599 U.S. at 294).

Plaintiffs also fail to cite any cases in which courts have found a cognizable "sovereign-interest injury" from a state's purported interest in "employer-employee relationships." Br. 30. Plaintiffs' inability to describe its purported interest in "employer-employee relationships" with specificity counsels against its recognition here. *See Murthy*, 144 S. Ct. at 1996 ("This Court has never accepted such a boundless theory of standing." (quotations omitted)). Moreover, the possibility of the challenged portion of the rule having any effect on the state's regulation of its workplaces is, at this stage, pure speculation and does not support plaintiffs' standing.

Plaintiffs' contention that the challenged aspect of the regulation "contravenes" their "interest in protecting the lives of their unborn citizens," Br. 31, is insufficient to

establish an injury-in-fact to plaintiffs. While a state may have a "legitimate interest in legislating to protect maternal health and fetal life," it "does not have standing to bring a lawsuit 'on behalf of its citizens' against a federal agency." *Washington*, 108 F.4th at 1178 (quoting *Brackeen*, 599 U.S. at 294). The Supreme Court has explained that "the State must articulate an interest apart from the interests of particular private parties" to establish a sovereign or quasi-sovereign interest. *Snapp*, 458 U.S. at 607. This ensures that sovereign-injury allegations cannot be used to "circumvent the limits on *parens patriae* standing." *Murthy*, 144 S. Ct. at 1996-97 (quoting *Brackeen*, 599 U.S. at 295 & n.11).

### 4. The challenged portion of the rule does not proscribe plaintiffs' messaging.

Nor can plaintiffs establish standing by asserting "speech infringement." Br. 32. Plaintiffs contend that they have "alleged an intention to engage in 'messaging that aim[s] to protect fetal life and discourage abortion.'" *Id.* (alteration in original) (quoting App. 47; R. Doc. 1, at 41, ¶ 123). To the extent plaintiffs can even assert "speech" rights, plaintiffs point to a complaint paragraph that hypothesizes the rule would "risk penalizing … messaging that aim[s] to protect fetal life and discourage abortion" without alleging any plaintiff's intent to engage in such messaging. *Id.*; App. 46-47; R. Doc. 1, at 40-41 ¶ 123. Plaintiffs' brief likewise fails to identify any messaging they engage in or imminently wish to engage in that the rule "clearly proscribe[s]," *Gray v. City of Valley Park*, 567 F.3d 976, 985 (8th Cir. 2009), or even

31

"arguably … proscribe[s]," *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 162 (2014) (first alteration in original) (quotations omitted). The rule does not proscribe employers from engaging in the messaging they describe.

Plaintiffs refer to the rule's "provisions prohibiting interference with a right 'protected by the PWFA,'" Br. 32, but the rule's anti-retaliation and anti-coercion provisions do not limit employers' messaging in the way plaintiffs contend. The anti-retaliation provision bars persons from "discriminat[ing] against any employee because such employee has opposed any act or practice made unlawful by the PWFA or because such employee made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under the PWFA." 29 C.F.R. § 1636.5(f)(1). The anti-coercion provision makes it "unlawful to coerce, intimidate, threaten, harass, or interfere with any individual in the exercise or enjoyment of, or on account of such individual having exercised or enjoyed, or on account of such individual having aided or encouraged any other individual in the exercise or enjoyment of, any right granted or protected by the PWFA." *Id.* § 1636.5(f)(2); 42 U.S.C. § 2000gg-2(f)(2). Neither provision proscribes employers from engaging in general messaging regarding abortion. Br. 32.; *see* 89 Fed. Reg. at 29,141-42, 29,148.

Plaintiffs point to a sentence in the Commission's explanation of the rule that observes that whether a mission statement, statement regarding an employer's religious beliefs, or employee handbook violates the anti-coercion provision will depend on the language of the statement. 89 Fed. Reg. at 29,141. Plaintiffs'

generalized reference to the notion that the anti-coercion provision could someday be violated by some employer does not support plaintiffs' standing here. Moreover, the Commission underscored that "the making of general statements regarding an employer's mission or religious beliefs is not the type of conduct that the Commission previously has determined would be prohibited by this provision." *Id.* at 29,142. Plaintiffs do not specifically identify any intended statement that would violate the anti-coercion provision. In any event, the Commission's determination of whether a statement violates the anti-coercion provision would depend on the specific statement and context. Plaintiffs cannot manufacture standing in the abstract.

**B.      Plaintiffs have not established the traceability or redressability of their purported injuries.**

Even assuming plaintiffs had demonstrated an injury-in-fact, plaintiffs cannot establish traceability or redressability, as the district court correctly concluded. *See* App. 383-87; R. Doc. 63, at 9-13. For Article III standing, plaintiffs must show that their purported injuries are "fairly traceable to the challenged conduct of the defendant and will likely be redressed by a favorable decision." *Digital Recognition Network, Inc. v. Hutchinson*, 803 F.3d 952, 956 (8th Cir. 2015). These requirements "are often flip sides of the same coin" because, "[i]f a defendant's action causes an injury, enjoining the action … will typically redress that injury." *Food & Drug Admin. v. Alliance for Hippocratic Med.*, 602 U.S. 367, 380-81 (2024) (quotations omitted).

Plaintiffs' purported injuries are not redressable by a stay of the rule's effective date or other relief directed to the rule because those remedies would affect neither the statutory authority of the Commission to investigate charges nor DOJ's authority to enforce the PWFA against plaintiffs. *See* 42 U.S.C. §§ 2000e-5(b), (f)(1), 2000gg-2(a)(1). Plaintiffs do not challenge the PWFA. *See* App. 378; R. Doc. 63, at 4. Even absent the rule, then, the Commission would still be required under the PWFA to assess whether an alleged denial of an abortion-related accommodation violated the statute, and whether to refer the charge to DOJ, and DOJ would retain its authority under the PWFA to decide whether to bring an enforcement action. *See* 42 U.S.C. §§ 2000e-5(b), (f)(1), 2000gg-2(a)(1).

This Court's decision in *School of the Ozarks* is illustrative. The Court in that case determined that the redressability requirement was not satisfied in a challenge to agency guidance interpreting the Fair Housing Act because, even without the guidance, the agency would retain the same "authority and responsibility" to investigate and enforce "based on the statute alone." 41 F.4th at 1001. The Fifth Circuit's decision in *Texas v. EEOC*, by contrast, is not on point, because the court there concluded that the challenged agency guidance "pressure[d] Texas to change its laws and policies," 933 F.3d at 448, by declaring certain state hiring practices unlawful under Title VII, *see id.* at 437-38, which did not declare such practices unlawful on its own. Here, the challenged accommodation requirement is set forth in the statutory text that mirrors the same language in Title VII that has a settled meaning. That

plaintiffs agree that employees are entitled to some abortion-related accommodations only confirms that the statute has independent force. Plaintiffs have thus failed to show that relief from the rule would redress their injuries supposedly arising from it. *See School of the Ozarks*, 41 F.4th at 1001.

An injunction against the Commission also would not provide the relief plaintiffs seek from enforcement by the Commission because the Commission cannot bring enforcement actions in court against state employers, and the "redressability prong is not met when a plaintiff seeks relief against a defendant with no power to enforce a challenged statute." *Digital Recognition Network*, 803 F.3d at 958 (quotations omitted). DOJ is the only agency vested with the authority to initiate enforcement actions against state employers under the PWFA. *See* 42 U.S.C. §§ 2000e-5(f)(1), 2000e-6(a), 2000gg-2(a)(1). As to state employers, the Commission's authority is limited to initial investigation of charges and attempts to use "informal methods" to obtain "voluntary compliance," *id.* § 2000e-5(b); 29 C.F.R. § 1601.24(b). Thus, an injunction barring the Commission from applying the challenged aspect of the rule to plaintiffs in processing a charge—"would not give [plaintiffs] legally enforceable protection from the allegedly imminent harm" they assert. *Brackeen*, 599 U.S. at 293. "[I]t is [a court's] judgment, not the opinion, that demonstrates redressability," *id.* at 294, and this Court's judgment in this case cannot bind DOJ, so plaintiffs cannot obtain relief here that would redress their purported injuries (Br. 41).

Moreover, even an overbroad injunction that prohibited the Commission from taking any action on certain PWFA charges would fail to remedy any supposed enforcement injury because of DOJ's independent enforcement authority. DOJ is not limited to filing suit based on charges referred to it by the Commission. *See* 42 U.S.C. § 2000gg-2(a)(1) (incorporating 42 U.S.C. § 2000e-5(f)(1)). DOJ has the authority to investigate alleged pattern-or-practice violations and bring enforcement actions against state employers based on such violations without any involvement by the Commission. *See* 42 U.S.C. § 2000gg-2(a)(1) (incorporating 42 U.S.C. § 2000e-6); *id.* § 2000e-6(a) (granting DOJ such authority). DOJ can bring such actions whenever it has reasonable cause to believe a pattern or practice of resistance to the full exercise of rights secured by the PWFA is occurring. *See id.* § 2000e-6(a).

In addition, as the district court recognized, enjoining the Commission from investigating certain alleged PWFA violations would not preclude employees from filing suit to enforce the PWFA. *See* App. 386-87; R. Doc. 63, at 12-13. State employees can request a right-to-sue notice even if a charge is pending with the Commission. In this circumstance, DOJ (not the Commission) is responsible for issuing the right-to-sue notice to the state employee, which can occur without a referral of the charge from the Commission to DOJ. *See* 42 U.S.C. § 2000e-5(f)(1); *id.* § 2000gg-2(a)(1); 29 C.F.R. § 1601.28(d)(2). And even in circumstances where employees would ordinarily obtain right-to-sue notices from the Commission, employees would remain free to file suit in federal court to enforce their statutory

rights under the PWFA even if the Commission were enjoined from issuing such notices. *Cf. Hiller v. Oklahoma ex rel. Used Motor Vehicle & Parts Comm'n*, 327 F.3d 1247, 1251-52 (10th Cir. 2003) (granting equitable exception to satisfying administrative prerequisites in similar context); *Fouche v. Jekyll Island-State Park Auth.*, 713 F.2d 1518, 1526 & n.11 (11th Cir. 1983) (same).

Plaintiffs' cited cases are not to the contrary. *Minnesota Citizens Concerned for Life v. Federal Election Commission*, 113 F.3d 129 (8th Cir. 1997), is not on all fours, because there, the requested court order would have invalidated a regulation that barred the plaintiff from being eligible for a campaign-finance exemption. *See id.* at 130-31. While a court order would not have established the plaintiff's entitlement to the exemption, it would nevertheless have removed an obstacle to the plaintiff's obtaining the exemption and thus relieved the plaintiff's injury. *See id.* at 131. But here, plaintiffs' requested relief would not eliminate the employer's statutory obligation or the government's authority or employees' rights to enforce the statute's requirements. It would not, in other words, relieve any of plaintiffs' purported injuries. *See id.*

This Court's decision in *281 Care Committee v. Arneson*, 638 F.3d 621 (8th Cir. 2011), is likewise distinguished by the fact that there, plaintiffs sought relief against government authorities that could enforce the challenged statute by filing criminal charges. *See id.* at 631. The fact that other parties could file civil complaints to enforce the statute did not undermine plaintiffs' standing, because a court order as to the criminal enforcement authorities would eliminate one enforcement actor and a

discrete injury: the First Amendment chilling effect caused by the government's enforcement of the statute. *See id.* Here, enjoining the Commission from investigating charges would not eliminate any source of enforcement authority or any discrete type of risk, and therefore would not provide the redress plaintiffs seek.

## C.     Because plaintiffs lack standing, dismissal was proper.

The district court properly dismissed the action because plaintiffs have not shown injury-in-fact, traceability, or redressability and therefore lack standing to proceed with their challenge. As the court explained, "[b]ecause the States lack standing, this Court lacks subject-matter jurisdiction." App. 402; R. Doc. 63, at 28; *see Dalton v. NPC Int'l, Inc.*, 932 F.3d 693, 696 (8th Cir. 2019). The district court's assessment of its subject-matter jurisdiction and *sua sponte* dismissal was appropriate. *See, e.g.*, *Hart v. United States*, 630 F.3d 1085, 1089, 1091 (8th Cir. 2011) (affirming district court's *sua sponte* evaluation of its subject-matter jurisdiction and concluding dismissal without prejudice was appropriate). Plaintiffs' reliance on *Bucklew v. Lombardi*, 783 F.3d 1120 (8th Cir. 2015), and *Smith v. Boyd*, 945 F.2d 1041 (8th Cir. 1991), for the proposition that *sua sponte* dismissal is appropriate "only where plaintiff cannot possibly prevail and amendment would be futile" (Br. 44 (quoting *Bucklew*, 783 F.3d at 1127)) is misplaced. Those cases involved dismissals for failure to state a claim, not jurisdictional dismissals without prejudice.

Plaintiffs contend that the district court should not have dismissed their complaint without assessing their constitutional challenge to the Commission's

structure (Br. 43).  But plaintiffs lack standing to bring that claim for the same reason that they lack standing for their other claims.  "In the specific context of the President's removal power," a plaintiff must show that it "'sustain[s] injury' from an executive act that allegedly exceeds the official's authority" to establish standing to press the structural challenge.  *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 591 U.S. 197, 211 (2020) (alteration in original).  Because plaintiffs have not shown any actual or imminent injury from the challenged portion of the rule, plaintiffs lack standing to press their structural challenge, and dismissal was proper.

Neither *Seila Law* nor *Axon Enterprise, Inc. v. Federal Trade Commission*, 598 U.S. 175 (2023), provides that the "fact of unlawful regulation" alone is sufficient for standing, as plaintiffs suggest (Br. 44).  Rather, *Seila Law* explains that a party has standing to bring a structural challenge only if it shows it is "aggrieved" by the challenged action.  591 U.S. at 211-12; *accord State Nat'l Bank*, 795 F.3d at 53 (explaining that a plaintiff must show that it has suffered "injury in fact caused by" the agency that is "redressable by the Court" to challenge agency structure).

## II.  Plaintiffs are not entitled to extraordinary injunctive relief.

### A.  If this Court does not affirm the judgment, remand is appropriate.

For the foregoing reasons, this Court should affirm the district court's dismissal of plaintiffs' complaint.  But if the Court concludes plaintiffs' claims are justiciable, it should remand the case so that the district court can assess the propriety of a

preliminary injunction in the first instance. Because this Court is "a court of appellate review, not of first view," "remand is ordinarily the appropriate course of action when it would be beneficial for the district court to consider an argument in the first instance." *MPAY Inc. v. Erie Custom Comput. Applications, Inc.*, 970 F.3d 1010, 1021 (8th Cir. 2020) (alteration and quotations omitted); *Lankford v. Sherman*, 451 F.3d 496, 513 (8th Cir. 2006) (remanding where district court had not addressed three of four preliminary-injunction factors). Here, the district court has not yet ruled on the likelihood of plaintiffs' success on the merits; nor has it balanced the equities of plaintiffs' request for extraordinary relief. *See* App. 402; R. Doc. 63, at 28. Remand would therefore be the proper course.

This case presents no special considerations warranting an exception to the rule. There are no timing concerns that make it "impractical to remand," as in *Carson v. Simon*, 978 F.3d 1051 (8th Cir. 2020) (per curiam), an election case decided days before the 2020 election. *Id.* at 1054, 1059. Nor is this Court considering an emergency request to prevent an impending action with financial consequences for millions, as in *Nebraska v. Biden*, 52 F.4th 1044 (8th Cir. 2022) (per curiam); indeed, the agency action that is the subject of this challenge is already in effect, and plaintiffs have shown no harm it has caused.

### B. Injunctive relief is not warranted.

In any event, plaintiffs have not established their entitlement to injunctive relief. "A preliminary injunction is an extraordinary remedy never awarded as of

right." *Winter*, 555 U.S. at 24.  To obtain such an injunction, plaintiffs must show that they are "likely to succeed on the merits" of their challenge, that they are "likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in [their] favor, and that an injunction is in the public interest."  *Id.* at 20. Plaintiffs have not carried that burden.

1. **Plaintiffs have not shown a likelihood of success on the merits.**

Plaintiffs have not shown a likelihood of success on the merits warranting a preliminary injunction because the PWFA's text requires accommodations for abortions.

**a.**  The PWFA requires employers to provide reasonable accommodations for the known limitations of pregnancy, childbirth, or related medical conditions, absent undue hardship.  The phrase "pregnancy, childbirth, or related medical conditions" is imported from Title VII, which provides that discrimination on "the basis of sex" includes discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000e(k).  This language was enacted as part of the Pregnancy Discrimination Act and codifies the Commission's understanding that Title VII's prohibition on sex discrimination extends to discrimination based on an employee's decision whether to have an abortion.  *See* H.R. Rep. No. 95-948, at 2; *see also General Elec. Co. v. Gilbert*, 429 U.S. 125, 140-41 (1976) (acknowledging the Commission's view).

The text of Congress's amendment to Title VII confirms that Congress understood "pregnancy, childbirth, or related medical conditions" to protect employees who choose to have or not have an abortion. Section 2000e(k) provides that "[t]he terms 'because of sex' or 'on the basis of sex' include, but are not limited to, because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). The next sentence clarifies that "[t]his subsection shall not require an employer to pay for health insurance benefits for abortion, except where the life of the mother would be endangered if the fetus were carried to term, or except where medical complications have arisen from an abortion." *Id.* That clarification necessarily implies that the first sentence includes abortion; there would be no need to exempt employers from paying for health insurance benefits for some abortions otherwise.

Since Title VII was amended in 1978, "pregnancy, childbirth, or related medical conditions" has been understood to protect employees' decision whether to have an abortion. *See* 89 Fed. Reg. at 29,106. All courts to have addressed the question have agreed that "pregnancy, childbirth, or related medical conditions" in Title VII prohibits discrimination on the basis of a woman's decision to have or not to have an abortion. *See Doe v. C.A.R.S. Prot. Plus, Inc.*, 527 F.3d 358, 364 (3d Cir. 2008); *Turic v. Holland Hosp., Inc.*, 85 F.3d 1211, 1214 (6th Cir. 1996); *Ducharme v. Crescent City Déjà Vu, L.L.C.*, 406 F. Supp. 3d 548, 556 (E.D. La. 2019); *DeJesus v. Florida Cent. Credit Union*, No. 8:17-cv-2502, 2018 WL 4931817, at *3-4 (M.D. Fla. Oct. 11, 2018)

(unpublished opinion); *see also In re Union Pac. R.R. Emp't Practices Litig.*, 479 F.3d 936, 942 (8th Cir. 2007) ("[A]bortion arguably would be 'related to' pregnancy … because abortion can only occur when a woman is pregnant."); *National Conference of Catholic Bishops v. Bell*, 490 F. Supp. 734, 736 & n.2 (D.D.C. 1980) ("As finally enacted, [the Pregnancy Discrimination Act] provided for paid sick leave benefits for the pregnancy, childbirth, or related medical conditions and would include elective or optional abortions."), *aff'd per curiam sub nom. National Conference of Catholic Bishops v. Smith*, 653 F.2d 535 (D.C. Cir. 1981).[1]  These decisions are consistent with the Commission's 45-year-old guideline that the relevant statutory language includes the decision whether to have an abortion. *See* 29 C.F.R. pt. 1604, app., Questions 34 & 35 (1979).

When Congress "transplanted" this term of art from Title VII, it "br[ought] the old soil with it."  *George v. McDonough*, 596 U.S. 740, 746 (2022) (quoting *Taggart v. Lorenzen*, 587 U.S. 554, 560 (2019)).  Thus, the PWFA rule explains that the PWFA entitles employees to accommodations associated with the decision to have or not have an abortion, just as in Title VII.  *See Smith v. City of Jackson*, 544 U.S. 228, 233 (2005) (plurality opinion) ("[W]hen Congress uses the same language in two statutes

---

[1] Because these decisions interpreted statutory language without relying on a constitutional right to abortion to reach their conclusions, they are not undermined by *Dobbs v. Jackson Women's Health Organization*, 597 U.S. 215 (2022).

having similar purposes, … it is appropriate to presume that Congress intended that text to have the same meaning in both statutes."); 89 Fed. Reg. at 29,099, 29,106.

**b.**  The PWFA defines "known limitation[s]" as "physical or mental condition[s] related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions."  42 U.S.C. § 2000gg(4).  As explained above, the settled meaning of the statutory phrase "pregnancy, childbirth, or related medical conditions" protects employees' decision whether to have an abortion.  The PWFA's requirement that accommodations be provided only for "physical or mental condition[s]" does not alter the meaning of the phrase that follows.

Plaintiffs agree that the PWFA entitles employees to reasonable accommodations for abortion care in a wide range of circumstances—namely, when the care is sought as an indicated treatment for a medical condition.  App. 311-12; R. Doc. 62, at 23-24.  They disagree, however, that the PWFA entitles an employee to a reasonable accommodation to seek an abortion when the employee is "suffering from no condition other than pregnancy itself."  App. 312; R. Doc. 62, at 24.  The line plaintiffs draw between permissible and impermissible accommodations is untethered to the statutory text, and their line would exclude accommodations plaintiffs themselves agree employees are entitled to under the PWFA.  Plaintiffs' reading thus confirms that "physical or mental condition" is broader than medical conditions necessitating treatment.

Plaintiffs' reading requires grafting atextual requirements onto the plain text of the PWFA's accommodation provision: first, that the "condition" comprising the known limitation is a medical condition, and second, that that condition be one for which abortion is an indicated treatment. The text justifies neither. The PWFA defines "known limitation" without the word "medical," using only "physical or mental" to modify the conditions that qualify. 42 U.S.C. § 2000gg(4). By the same token, the PWFA makes no mention of treatments, let alone indicated treatments. Plaintiffs offer no basis for inserting this additional requirement either. The phrase "physical or mental condition" does not limit the accommodations available under the PWFA to those sought as indicated treatments for medical conditions. Instead, the PWFA entitles employees to accommodations for a wider range of physical or mental conditions related to pregnancy, childbirth, and related medical conditions. This includes accommodations in circumstances where employees are seeking care that is "elective" or not medically indicated. *See* H.R. Rep. No. 117-27, pt. 1, at 29 (2021) (recognizing PWFA entitles employees to accommodations for "prenatal appointments"); *see also, e.g.*, 89 Fed. Reg. at 29,174-75, 29,184-85 (providing examples of other accommodations not involving medical care).

**c.** Plaintiffs' arguments against this plain-text reading of the statute are unavailing. As to the text, Congress was not required to cross-reference the Title VII provision containing the phrase "pregnancy, childbirth, or related medical conditions" to incorporate the meaning of that phrase from the Title VII context because Title

45

VII is the only other statute containing that language. *See* 89 Fed. Reg. at 29,108. As to legislative history, a handful of individual lawmakers' statements do not supersede the settled meaning of the statutory text that Congress enacted into law. *See NLRB v. SW Gen., Inc.*, 580 U.S. 288, 306 (2017). And as to case law, plaintiffs' "contrary" precedents (Br. 49) do not address the issue presented in this case concerning the PWFA's coverage of abortion-related accommodations.

Contrary to plaintiffs' contention (Br. 49), state sovereign immunity is irrelevant to the federal government's ability to bring claims against plaintiffs. *See Alden v. Maine*, 527 U.S. 706, 755 (1999) (state sovereign immunity does not extend to suits "by the Federal Government"). In any event, Congress abrogated state sovereign immunity in the PWFA, *see* 42 U.S.C. § 2000gg-4, consistent with its authority under Section 5 of the Fourteenth Amendment to remedy "invalid gender stereotypes in the employment context," *Nevada Dep't of Human Res. v. Hibbs*, 538 U.S. 721, 730 (2003); *see also Fitzpatrick v. Bitzer*, 427 U.S. 445, 457 (1976). And Congress addressed the concerns expressed in the letter plaintiffs cite by, among other things, receiving testimony about countering gender stereotypes and tailoring the PWFA's protections accordingly. *See* R. Doc. 34, at 41-42. Plaintiffs' other constitutional arguments (Br. 49) are likewise unavailing.

The major questions doctrine (Br. 49-50) is inapplicable here. The challenged aspect of the rule follows legislative policy choices reflected in the statutory text and context. And the Commission's implementation of those choices does not reflect

some "transformative expansion" of the Commission's regulatory authority, *West Virginia*, 597 U.S. at 724 (quoting *Utility Air Regulatory Grp. v. EPA*, 572 U.S. 302, 324 (2014)); rather, it is consistent with the Commission's settled authority to regulate workplace discrimination and accommodations, as reflected in its longstanding role in administering Title VII and the Americans with Disabilities Act.  Plaintiffs challenge only a narrow slice of the Commission's regulation implementing the PWFA, which does not give rise to a "major" question.  The fact that plaintiffs' challenge may touch on a politically salient issue does not render it one of the "extraordinary cases" in which the major questions doctrine applies.  *Id.* at 721 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)); *see also* App. 395-98; R. Doc. 63, at 21-24.

### 2. Plaintiffs have not shown that they will suffer irreparable harm or that the balance of equities weighs in their favor.

**a.**  For the same reasons that plaintiffs fail to demonstrate injury-in-fact resulting from the challenged aspect of the rule, *supra* pp. 14-33, plaintiffs fail to establish that they will suffer irreparable harm absent an injunction, as the district court correctly held, App. 390-94; R. Doc. 63, at 16-20.  *See Sessler v. City of Davenport*, 990 F.3d 1150, 1156 (8th Cir. 2021) (concluding that plaintiffs had not shown irreparable harm where their asserted injury was too speculative).  The challenged aspect of the rule does not conflict with any state law that plaintiffs have identified; does not limit plaintiffs' messaging; and does not impose any distinct costs that

plaintiffs have identified separate from the statute and regulation as a whole. *See supra* pp. 23-33. Their inability to establish harm is even more stark now, given that the rule has gone into effect, and yet plaintiffs identify nothing in the past two months that has purportedly caused them any harm.

**b.** The balance of equities and the public interest also compel denying plaintiffs' request for extraordinary relief. *See Nken v. Holder*, 556 U.S. 418, 435 (2009); *Winter*, 555 U.S. at 20. Contrary to the assertions in their brief (Br. 52), plaintiffs have not shown such an "extremely high likelihood of success on the merits" that a preliminary injunction would demonstrably serve the public interest. *League of Women Voters of the U.S. v. Newby*, 838 F.3d 1, 12 (D.C. Cir. 2016). Nor is an injunction warranted on the grounds that it is in the public interest for plaintiffs to be able to enforce their abortion laws, since the challenged accommodation requirement does not prohibit plaintiffs from doing so.

On the other hand, if the injunction plaintiffs seek is entered, the government and the public will be irreparably injured. Congress crafted the PWFA to fill gaps in pregnancy-related protections for workers and to allow those individuals to continue working. Its scheme for doing so involved the Commission receiving and investigating charges from aggrieved workers. Enjoining the Commission will thus frustrate Congress's design. Private individuals and employers would also be harmed by an injunction against the Commission, since they will be deprived of the opportunity to resolve disputes informally and confidentially through the

Commission's conciliation process and forced into court instead.  *See West v. Gibson*, 527 U.S. 212, 219 (1999).  Plaintiffs' unproven sovereign injuries and undefined compliance costs do not justify an injunction that would frustrate the Commission's efforts to carry out Congress's design for eliminating workplace discrimination and protecting workers.

If the Court disagrees and declines to remand the matter for the district court to assess the propriety of injunctive relief in the first instance, any injunctive relief "must be tailored to redress the plaintiff's particular injury."  *Gill v. Whitford*, 585 U.S. 48, 73 (2018).  Only a handful of plaintiffs submitted affidavits challenging the regulation, and any relief should be limited to those plaintiffs in their capacities as employers.  *See id.* ("[S]tanding is not dispensed in gross[.]").  Relief should also be limited to relief from enforcement by the Commission of the specific aspect of the regulation that those plaintiffs challenge.

## CONCLUSION

For the foregoing reasons, the district court's judgment should be affirmed.

Respectfully submitted,

BRIAN M. BOYNTON
*Principal Deputy Assistant Attorney General*

MICHAEL S. RAAB
STEPHANIE R. MARCUS

*s/ Urja Mittal*
URJA MITTAL
KELSEY FRASER
*Attorneys, Appellate Staff*
*Civil Division, Room 7248*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 353-4896*
*urja.mittal@usdoj.gov*

August 2024

## CERTIFICATE OF COMPLIANCE

This brief complies with the type-volume limit of Federal Rule of Appellate Procedure 32(a)(7)(B) because it contains 12,459 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Garamond 14-point font, a proportionally spaced typeface.

Pursuant to Circuit Rule 28A(h)(2), I further certify that the brief has been scanned for viruses, and the brief is virus free.

*s/ Urja Mittal*
URJA MITTAL

# CERTIFICATE OF SERVICE

I hereby certify that on August 23, 2024, I electronically filed the foregoing brief with the Clerk of the Court for the United States Court of Appeals for the Eighth Circuit by using the appellate CM/ECF system.


*s/ Urja Mittal*
URJA MITTAL