United States Court of Appeals

For the Eighth Circuit

_____

No. 24-2249
_____

State of Tennessee; State of Arkansas; State of Alabama; State of Florida; State of Georgia; State of Idaho; State of Indiana; State of Iowa; State of Kansas; State of Missouri; State of Nebraska; State of North Dakota; State of Oklahoma; State of South Carolina; State of Utah; State of West Virginia; State of South Dakota,

*Plaintiffs - Appellants*,

v.

Equal Employment Opportunity Commission,

*Defendant - Appellee*.

------------------------------

The Ethics & Public Policy Center,

*Amicus on Behalf of Appellant(s)*,

American College of Obstetricians and Gynecologists; Society for Maternal-Fetal Medicine; Society of General Internal Medicine; Council of University Chairs of Obstetrics and Gynecology; American Medical Women's Association; North American Society for Pediatric and Adolescent Gynecology; American College of Physicians; American College of Preventative Medicine; American College of Medical Genetics and Genomics; American Academy of Family Physicians; National Association of Nurse Practitioners in Women's Health; American Gynecological and Obstetrical Society; American College of Nurse Midwives; American Academy of Pediatrics; American Civil Liberties Union of Iowa; American Civil Liberties Union of Minnesota; American Civil Liberties Union of

Missouri; American Civil Liberties Union of Nebraska; American Civil Liberties Union of South Dakota, North Dakota and Wyoming,

*Amici on Behalf of Appellee(s)*,

Small Business Majority; Main Street Alliance; American Sustainable Business Council; State of New York; State of Arizona; State of California; State of Colorado; State of Connecticut; State of Delaware; State of Hawaii; State of Illinois; State of Maine; State of Maryland; State of Massachusetts; State of Michigan; State of Minnesota; State of Nevada; State of New Jersey; State of New Mexico; State of North Carolina; State of Oregon; State of Pennsylvania; State of Rhode Island; State of Vermont; State of Washington; State of Wisconsin; District of Columbia; National Women's Law Center; American Civil Liberties Union; American Civil Liberties Union of Arkansas; A Better Balance; Actors' Equity Association; American Federation of Labor and Congress of Industrial Organizations; American Federation of State, County and Municipal Employees; American Federation of Teachers; Center for WorkLife Law; Communications Workers of America; Legal Aid at Work; National Center for Law and Economic Justice; National Education Association; National Employment Law Project; National Nurses United; National Partnership for Women and Families; One Fair Wage; Public Counsel; Service Employees' International Union; United Food and Commercial Workers International Union,

Amici Curiae - *Amici on Behalf of Appellee(s)*.
_____

Appeal from United States District Court
for the Eastern District of Arkansas - Delta
_____

Submitted: September 24, 2024
Filed: February 20, 2025
_____

Before COLLOTON, Chief Judge, LOKEN and KOBES, Circuit Judges.
_____

COLLOTON, Chief Judge.

Tennessee and sixteen other states brought this action to challenge the lawfulness of a regulation promulgated by the Equal Employment Opportunity Commission. The States moved for a preliminary injunction. The district court concluded that the States lacked standing to sue and dismissed the action for lack of jurisdiction. The States appeal, and we reverse and remand.

I.

Congress enacted the Pregnant Workers Fairness Act, 42 U.S.C. § 2000gg, in 2022. The Act declares it unlawful for a covered employer to "not make reasonable accommodations to the known limitations related to the pregnancy, childbirth, or related medical conditions of a qualified employee," absent a showing of undue hardship to the employer. *Id*. § 2000gg-1(1). The statute defines a "known limitation" as a "physical or mental condition related to, affected by, or arising out of pregnancy, childbirth, or related medical conditions." *Id*. § 2000gg(4). The Act applies to state and local governments as employers, and Congress declared that a State shall not be immune under the Eleventh Amendment from an action for a violation of the Act. *Id*. § 2000gg-4.

Congress tasked the EEOC to issue regulations to implement the Act. *Id*. § 2000gg-3. After notice and comment, the EEOC promulgated 29 C.F.R. § 1636, a final rule implementing the Act. Among its provisions, the Rule provides an extensive list of example conditions that "are, or may be, 'related medical conditions'" under the Act's definition of "known limitation." *Id.* § 1636.3(b). The list includes "termination of pregnancy, including via miscarriage, stillbirth, or abortion." *Id.* "Reasonable accommodation" varies with the employee's condition and circumstances but generally includes adjustments to work environment, job restructuring, unpaid leave, and the ability to use accrued paid leave. *Id.* § 1636.3(h)-

(j). In addition to the cost of providing any given accommodation, the EEOC expects regulated parties to experience one-time administrative compliance costs from such activities as familiarizing themselves with the rules, posting new EEO posters, and updating employment policies and handbooks. 89 Fed. Reg. 29,177.

The States believe that the Rule requires them to make reasonable accommodations for state employees seeking an abortion in all circumstances. The States currently refuse to accommodate state employees who seek elective abortions. Different States have different policies about when an abortion is elective, but all of the state policies conflict with the Rule.

The States sued the EEOC seeking an injunction against enforcement of the Rule and a declaratory judgment that the Rule is unlawful. The States advanced four grounds for relief: (1) the Rule is arbitrary and capricious; (2) the agency's definition of "related medical conditions" exceeds the EEOC's authority under the Act; (3) the Rule violates the First Amendment and constitutional principles of federalism; and (4) the EEOC's for-cause removal structure is unconstitutional under Article II of the Constitution.

Without reaching the merits of these claims, the district court dismissed the action for lack of jurisdiction. The court concluded that there was no case or controversy under Article III because the States failed to allege an injury in fact that could establish standing to challenge the Rule.

The court concluded that the States' alleged sovereign harms were not imminent because the risk of enforcement is speculative. The court also ruled that any sovereign injury was not redressable by the court because a decision setting aside the Rule would not eliminate the possibility that the Act by itself requires the States to accommodate employees who seek elective abortions. The court next concluded that the costs of complying with the Rule did not establish an injury in fact. The court

Appellate Case: 24-2249     Page: 4     Date Filed: 02/20/2025 Entry ID: 5487426

reasoned that the States could not trace any definite portion of expected one-time compliance costs to the challenged portion of the Rule and that the costs of providing accommodations are not traceable to a threat of enforcement. Finally, the court rejected the argument that the States have standing by virtue of their position as direct objects of the EEOC's regulatory action. The district court dismissed the motion for preliminary injunction as moot and, in the alternative, because the States failed to show irreparable harm. The States appeal, and we review the district court's decision *de novo*.

II.

Article III of the Constitution limits the jurisdiction of the federal courts to cases or controversies. *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 341 (2006). A plaintiff invoking federal jurisdiction must establish Article III standing to sue. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). At the pleading stage, a plaintiff must "allege sufficient facts to support a reasonable inference that [it] can satisfy the elements of standing." *Animal Legal Def. Fund v. Vaught*, 8 F.4th 714, 718 (8th Cir. 2021). Those elements are (1) an injury in fact (2) caused by the challenged conduct of the defendant and (3) likely to be redressed by a favorable decision. *Lujan*, 504 U.S. at 560-61.

An injury in fact is "'an invasion of a legally protected interest' that is 'concrete and particularized' and 'actual or imminent, not conjectural or hypothetical.'" *Spokeo, Inc. v. Robins*, 578 U.S. 330, 339 (2016) (quoting *Lujan*, 504 U.S. at 560). Where a plaintiff is the object of a regulatory action, "there is ordinarily little question that the action or inaction has caused [the plaintiff] injury, and that a judgment preventing or requiring the action will redress it." *Lujan*, 504 U.S. at 561-62. A regulated party has "a concrete interest . . . in avoiding regulatory obligations above and beyond those that can be statutorily imposed upon them." *Iowa League of Cities v. EPA*, 711 F.3d 844, 871 (8th Cir. 2013).

-5-

We conclude that the States have standing to challenge the Rule. The States are the object of the EEOC's regulatory action. They are employers covered by the Act and the Rule. 42 U.S.C. § 2000gg(2)(B), (3)(D). The States allege that the Rule compels them to provide accommodations to employees that the States otherwise would not provide, to change their employment practices and policies, and to refrain from pro-life messaging that arguably would be "coercive" and thus proscribed by the Rule. Because the States are the object of an agency action, they are injured by the imposition of new regulatory obligations. The injury is caused by the agency's action, and a judicial decision setting aside the action would remedy the injury.

The imposition of a regulatory burden itself causes injury. In *West Virginia v. EPA*, 597 U.S. 697 (2022), the Supreme Court held that the plaintiff States were injured by an EPA regulation because they were "'the object of' its requirement that they more stringently regulate power plant emissions within their borders." *Id.* at 719 (quoting *Lujan*, 504 U.S. at 562). The Court thus deemed it unnecessary to consider whether the requirement caused any specific economic harms to the States or whether the States faced a credible threat of enforcement if they refused to comply. *Id*. This court similarly held that an association of cities alleging that an agency action violated its procedural rights had standing to challenge the action because the cities had a concrete interest in avoiding regulatory obligations that were not authorized by statute. *Iowa League of Cities*, 711 F.3d at 871.

The EEOC maintains that the Rule does not compel the States to act and does not produce an injury until an employee requests an abortion-related accommodation. Although the EEOC anticipates that employers will update employment policies and train their staffs on new requirements, the EEOC contends that these are voluntary measures not required by the Rule.

The agency's notion of actions undertaken "voluntarily" is inconsistent with the realities facing these regulated parties. Covered entities must comply with the

-6-

Appellate Case: 24-2249     Page: 6     Date Filed: 02/20/2025 Entry ID: 5487426

Rule, and we presume that the States will follow the law as long as the Rule is in effect. An employer cannot meet its obligations under the Rule without taking steps to ensure that its employees know their rights and obligations under the Rule. As a practical matter, the Rule requires immediate action by the States to conform to the Rule, and this action produces an injury in fact. *See id.* at 870.

The EEOC argues that any injury is too speculative under *School of the Ozarks, Inc. v. Biden*, 41 F.4th 992 (8th Cir. 2022). In *School of the Ozarks*, however, an institution of higher education sought to challenge a federal agency's internal memorandum that did not regulate the college. *Id.* at 999-1000. The memorandum merely gave direction to agency staff and did not injure the institution. By contrast, the States in this case are the direct objects of the EEOC's rule, and the Rule injures the States by requiring them to act contrary to their established policies.

For these reasons, we conclude that the States have Article III standing to sue, and we therefore reverse the judgment dismissing the action. We remand the case for further proceedings and express no view on the merits of the claims.

_____